JS 44 (Rev. 10/20) **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| John Doe | State of Michigan Governor Gretchen Whitmer, et al. |

| **(b)** County of Residence of First Listed Plaintiff Genessee | County of Residence of First Listed Defendant Ingham |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)*<br>Coontz Law PLLC<br><br>1100 W. Saginaw St. Suite 4A Lansing MI 48915<br>(517) 940-8004 | Attorneys *(If Known)* |
|---|---|

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>☐ 880 Defend Trade Secrets Act of 2016 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☒ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |
| | | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983

Brief description of cause: This complaint alleges constitutional violations due to defendants' subjecting plaintiff to lifetime registration on Michigan's sex offender registry when the statute has been found to be unconstitutional.

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
Declaratory and Injunctive Relief

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions:)*    JUDGE _____    DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 03/09/2022 | /s/ Dustyn Coontz |

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.**   **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**   **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.**   **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**   **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

United States District Court
Eastern District of Michigan

JOHN DOE,

     Plaintiff,

Case no: 3:22-cv-10516

v.

Hon.

GRETCHEN WHITMER, Governor
of the State of Michigan, and COL.
JOSEPH GASPER, Director of the
Michigan State Police, in their official
capacities,

**COMPLAINT**

**DEMAND FOR DECLARATORY
AND INJUNCTIVE RELIEF**

     Defendants.

**Dustyn Coontz (P80102)**
Attorney for John Doe
1100 W. Saginaw St.
Suite 4A
Lansing, MI 48915
(517) 940-8004
dc@coontzlaw.com

## **COMPLAINT**

John Doe, by and through his attorney, Dustyn Coontz, appears and states the following:

1. This action is brought on behalf of John Doe, an individual subject to registration under Michigan's Sex Offenders Registration Act (SORA), M.C.L. § 28.721 *et seq.*, seeking declaratory and injunctive relief for violations of his constitutional rights.

2. For almost a decade, courts have repeatedly held Michigan's Sex Offenders Registration Act (SORA), M.C.L. § 28.721 *et seq.*, to be unconstitutional. *See Does #1-5 v. Snyder*, No. 12-cv-11194 (E.D. Mich.) (*Does I*); *Roe v. Snyder*, No. 16-cv-13353 (E.D. Mich.); *Does #1-6 v. Snyder*, No. 16-cv-13137 (E.D. Mich.) (*Does II*); *People v. Betts*, __ N.W.2d __, 2021 WL 3161828 (Mich. July 27, 2021).

3. Despite these rulings, the State of Michigan has continued to enforce a statute Defendants know to be unconstitutional. Finally, when faced with the imminent entry of a class-wide permanent injunction in *Does II* barring enforcement of major portions of SORA, the 2020 lame duck Michigan legislature made *minor* amendments to the law. But the legislature left intact the core constitutional defects of the law—which continues to impose extensive burdens, in most cases for life, without any individualized assessment of whether such burdens are justified—forcing Doe here to turn to this Court to vindicate his rights.

4. When Doe was convicted in 1991, no such thing as a sex offender registry existed.

5. Three years into his imprisonment, he was notified that Michigan had passed the first version of SORA, subjecting him to registration for 25 years, on a

*private* law enforcement database. *See* Ex. 1, Notification of Registration Requirements.

6.  This 25-year registration requirement would have ended in 2016 if the Michigan legislature had not subsequently amended SORA several times, eventually subjecting him to a lifetime registration requirement in 2011.

7.  Doe was blindsided by this registration requirement from the beginning, but was horrified when he inevitably discovered that he now had to register for life on a public database.

8.  Doe was not the only one upset by this retroactive punishment. The American Civil Liberties Union (ACLU) filed its first complaint challenging the constitutionality of SORA over a decade ago, and the litigation began to spark what is known as the *Does I* and *Does II* litigation.

9.  Almost six years ago, in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), ("*Does I*"), the Sixth Circuit Court of Appeals held that SORA imposed punishment and that retroactive application of SORA's 2006 and 2011 amendments violated the U.S. Constitution's Ex Post Facto Clause.

10.  Nevertheless, the State of Michigan continued to subject tens of thousands of registrants to retroactive punishment under SORA.

11.  This Court held (1) that SORA's prohibitions on working, residing, or loitering in exclusion zones were unconstitutionally vague; (2) that certain

elements of SORA's reporting requirements were unconstitutionally vague; (3) that imposing strict liability for SORA violations violated due process (and therefore SORA had to be read to incorporate a knowledge requirement); and (4) that the requirement to report certain electronic identifiers immediately violated the First Amendment. *See Does #1-5 v. Snyder*, 101 F. Supp. 3d 672 (E.D. Mich. 2015).

12. In a subsequent opinion, *Does #1-5 v. Snyder*, 101 F. Supp. 3d 722 (E.D. Mich. 2015), this Court further held that the retroactive incorporation of the lifetime registration obligation to report certain electronic identifiers also violated the First Amendment.[1]

13. Nevertheless, the State of Michigan continued to subject tens of thousands of registrants to these unconstitutional provisions.

14. Once again fed up, the ACLU filed another lawsuit to enforce the *Does I* ruling. This subsequent set of litigation is often referred to as "*Does II*."

15. On February 14, 2020, in *Does II*, this Court rendered an opinion enforcing the Sixth Circuit's order in *Does I* and thereafter applying the previous rulings to all Michigan registrants and directing the parties to write an Explanation of Duties. *See Doe v. Snyder*, 449 F. Supp. 3d 719, 723 (E.D. Mich. 2020) ("*Does II*").

---

[1] Because Doe's convictions predate 2011, he is no longer forced to register any email addresses or internet identifiers. M.C.L. § 38.725(2)(a).

4

16. In April 2020, an Interim Order Delaying Entry of Final Judgment, Preliminarily Enjoining Reporting Requirements, and Directing Publication was entered. The order suspended many requirements, including the reporting requirements. *See Does II*, No. 2:2016cv13137–Document 91 (E.D. Mich. 2020).

17. On June 21, 2021, this Court entered an Opinion and Order granting the plaintiffs' motion to enforce the *Does I* judgment. *See Does II*, Case No. 16-13137, at *10 (E.D. Mich. June 21, 2021). This Court held (1) the new SORA applies only to conduct occurring on or after March 24, 2021; (2) the February 14, 2020 interim order does not prevent the enforcement of the new SORA; and (3) the concurrent state litigation pending in *People v. Betts* did not preclude the federal district court from rendering its opinion.

18. Just over one month later, on July 27, 2021, in *People v. Betts*, the Michigan Supreme Court held that if a registrant's offense occurred before the passage of the July 1, 2011 SORA amendments, then the 2011 SORA amendments are considered to be *ex post facto* punishment as applied to that registrant. WL 3161828, at *1 (Mich. July 27, 2021).

19. More specifically, the Michigan Supreme Court held that (1) when applied to registrants whose predate 2011, the 2011 amendments to SORA violate the Ex Post Facto Clause of the Constitution; (2) while the Legislature

intended SORA to be a civil regulation rather than punishment, the 2011 amendments' "aggregate punitive effects" completely negated that intention; and (3) because severability and revival of the non-punitive provisions of the 2011 SORA were inappropriate to remedy a constitutional violation, the 2011 SORA amendments could not retroactively apply to registrants whose criminal acts predate their enactment. *Id.* at *1-*2.

20.   Although a group of carefully-selected stakeholders (including representatives from law enforcement, prosecutors, corrections, survivors' groups, the governor's offices, legislative staff, and the ACLU) had been working for more than a year to craft a law that would be both constitutional and evidence-based, the legislature ignored those efforts. Instead, it passed Public Act 295 of 2020, which the governor signed, and which took effect on March 24, 2021.

21.  This newest version of SORA makes only minor and superficial changes to Michigan's registry, which fundamentally constrains the lives of some 45,000 Michiganders, as well as almost 10,000 people now living out of state. Like its predecessor, the new SORA imposes a vast regime of restrictions, including continuous reporting and public shaming, that affect virtually every facet of registrants' lives, in most cases for life.

22. The new SORA continues to impose life-altering burdens without any individualized assessment or review. The new SORA continues to treat all registrants—regardless of the circumstances of their offense, the passage of time, their age, their rehabilitation, their health, or their cognitive and physical abilities—as if they pose a high and irremediable risk to public safety. And the new SORA brands everyone on the public registry as a current threat to the community without any evidence that they are, and no avenue to petition for removal.

23. The new SORA continues to categorize registrants into three tiers, which determine the frequency of reporting and periods of registration (15 years, 25 years, or life). Tier classifications are based solely on the offense, without any assessment of risk. For the vast majority of registrants, nearly three-quarters of everyone subjected to registration, there is no path off the registry: the only way to come off the registry is to die.

24. The new SORA keeps intact nearly all of the 2011 amendments—which the Sixth Circuit held violated the Ex Post Facto Clause—including the 2011 amendments that retroactively extended registration terms for approximately 17,000 people from 25 years to life. Doe is one of those 17,000. The new SORA continues to apply those provisions retroactively to all pre-2011 registrants.

25. SORA's extensive supervision requirements, which include reporting vast amounts of information, often within three business days, remain almost unchanged. Indeed, in some respects the new law adds even more onerous reporting requirements (e.g., for Doe, requiring more information about phones and vehicles). Although some changes can now be reported by mail, others still must be reported in person, leading to great confusion among registrants and law enforcement alike about how to report different types of information.

26. The new SORA continues to brand registrants as dangerous, without any determination of risk or consideration for individual circumstances, by placing nearly all of them on the online public registry. This produces the predictable result of losing and employment opportunities, and shunning them in their communities.

27. The new SORA, like its predecessors, also ignores the scientific consensus that registries do not work. Broad conviction-based registries like Michigan's are completely ineffective at reducing recidivism, and indeed may *increase* offending by sabotaging the ability of people to obtain housing, employment, and family support that are critically important for them to lead productive lives.

28. The research also shows that the vast majority of those convicted of a sex offense will never commit another sex offense. There is wide variation in risk levels among people with past sex offenses, and the nature of a past conviction—which determines registration requirements in Michigan—does not correlate with re-offense risk, unlike empirically validated risk instruments.

29. In sum, the new SORA suffers from the same constitutional problems as the previous law because the basic structure of the Act remains unchanged. The legislature's superficial tinkering with the statute does little to address the heart of the Sixth Circuit's and Michigan Supreme Court's objections to the law, namely that it treats people as dangerous "without any individual assessment" and subjects everyone to the same onerous reporting requirements—most for life—despite "scant evidence" that such restrictions make communities safer. *Does I*, 834 F.3d at 705.

30. Doe now seeks to ensure that he will not suffer unconstitutional retroactive punishment in violation of the Sixth Circuit's decisions in *Does I* and *Does II*, and the Michigan Supreme Court's decision in *Betts*; will not be subjected in the future to SORA provisions found to be unconstitutional by this Court; and will be treated uniformly and consistently statewide.

31. Doe seeks declaratory and injunctive relief for violations of his constitutional rights.

## JURISDICTION

32. Under 28 U.S.C. § 1331, this Court has original jurisdiction to hear all claims "arising under the Constitution [or] laws . . . of the United States."

33. This complaint brings suit under 42 U.S.C. § 1983 and alleges violations of the U.S. Constitution.

34. Under 28 U.S.C. § 1367, this Court also has supplemental jurisdiction for "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III."

35. This complaint also alleges violations of Michigan state law, but the facts supporting the state claims are the same facts supporting the federal claims.

36. The plaintiff's requests for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201–02, by Fed. R. Civ. P. 57 and 65, and by the legal and equitable powers of this Court.

## VENUE

37. Venue is proper both because plaintiff resides in this District[2] and because at least some of the events "giving rise to the claim" occurred in this District.[3]

## PARTIES

### Plaintiff

38. Plaintiff John Doe resides in the Eastern District of Michigan.

39. In 1991, Doe pleaded guilty in Genesee County and Ingham County for second-degree criminal sexual conduct, contrary to M.C.L. § 750.520c, and third-degree criminal sexual conduct, contrary to M.C.L. § 750.520d(1)(A), respectively.

40. Doe was sentenced to 6 to 15 years for the Genesee County conviction, and 40 to 60 months for the Ingham County convictions. He served these sentences concurrently.

41. Three years after Doe began his period of incarceration, he was notified that Michigan had passed the first enactment of SORA and that he would be subjected to a 25-year registration requirement. *See* Ex. 1, Notification of Registration Requirements.

42. Doe successfully completed his term of imprisonment as well as his term of parole for these convictions, allowing him to be released from both early.

---

[2] 28 U.S.C. § 1391(b)(1); *see also* 28 U.S.C. § 1391(c)(2).
[3] 28 U.S.C. § 1391(b)(2).

43. Since its inception, Doe has seen many changes to SORA that have affected his life on a day-to-day basis: the registry is now publicly available online, which has subjected him to lost job opportunities, ostracism and public shaming by his peers, and harassment of his loved ones; he is now subject to a lifetime reporting requirement, when he initially was unaware of the possibility of a registry at all, and was then told he would only need to report for 25 years; and he must deal with the Michigan State Police on a regular basis, who have, at a minimum, treated him as unimportant, invisible, and if they do choose to address him, it's in the form of showing up at his house with multiple police cars and making a scene.

44. Doe must report in-person four times per year for the remainder of his life based on a statutory scheme that took effect years after his convictions.

45. His convictions occurred years before the inception of SORA, as well as the multiple subsequent amendments. Doe therefore did not receive, and could not have received, any notice that his convictions would subject him to lifetime registration as a sex offender.

46. Even after *Does I*, *Does II*, and *Betts*, the defendants have required Doe to comply with all of the provisions of SORA including the 2006, 2011, and 2021 amendments, have labeled him as a Tier III offender, and have subjected him to lifetime registration. M.C.L. § 28.722(v)(*iv*).

47. There is no mechanism in the statute by which Doe can ever come off the registry other than to die.

## Defendants

### Governor Gretchen Whitmer

48. Defendant Gretchen Whitmer is the Governor of Michigan. She is sued in her official capacity.

49. Pursuant to Article 5, § 1 of the Michigan Constitution, the executive power of the state is vested in the governor. The Michigan Constitution further provides that the Governor shall take care that applicable federal and state laws are faithfully executed. Mich. Const., Art. 5, § 8.

50. Defendant Governor Whitmer is ultimately responsible for the enforcement of the laws of this state, and for supervision of all state departments, including the Michigan State Police.

51. The Governor is an appropriate Defendant in a case challenging the constitutionality of a state statute.

### Colonel Joseph Gasper

52. Defendant Colonel Joseph Gasper is the director of the Michigan State Police. He is sued in his official capacity.

53. The Michigan State Police maintains Michigan's sex offender registry. M.C.L. § 28.721 *et seq.*

54. The State Police's responsibilities include enforcing SORA, maintaining the state's database of sex offenders, maintaining an online public sex offender registry, registering offenders (along with other law enforcement agencies), developing registration forms, providing statutorily required notices to registrants, collecting registration fees, and coordinating with national law enforcement and the national sex offender registry. *See* M.C.L. §§ 28.724, 28.724a, and 28.725 *et seq.*

55. The director of the Michigan State Police is an appropriate defendant in a case challenging the constitutionality of Michigan's SORA.

## FACTUAL ALLEGATIONS

### I. History of the Michigan Sex Offender Registration Act

56. The new SORA imposes obligations, disabilities, and restraints, which are too extensive to be set out in full here.

57. It was not always this way. Michigan passed its first sex offender registration law in 1994. 1994 Mich. Pub. Act 295 (effective Oct. 1, 1995). Before that time, Michigan did not require anyone to register as a sex offender for any purpose.

58. The 1994 statute established a *private law enforcement* database containing basic information about people convicted of sex offense. Registration information was exempt from all public disclosure. A person who divulged

registry information to the public was guilty of a misdemeanor, and a registrant whose information was revealed had a civil cause of action for treble damages. 1994 Mich. Pub. Act 295, § 10.

59. The statute did not require verification or reporting. After the initial registration was completed, the only additional obligation was to notify local law enforcement within 10 days of a change of address. The registrant did not need to notify law enforcement in person. 1994 Mich. Pub. Act 295, § 5(1).

60. Registry information was maintained for 25 years for individuals convicted of one offense and for life for individuals convicted of multiple offenses. 1994 Mich. Pub. Act 295, § 5(3)–(4).

61. The statute applied retroactively to people whose convictions occurred before October 1, 1995, but only if they were still incarcerated, on probation or parole, or under the jurisdiction of the juvenile division of the probate court or department of social services on that date. 1994 Mich. Pub. Act 295, § 3(1)(b)–(c).

62. Since that time, the state legislature has *repeatedly* and *arbitrarily* amended the statute, each time imposing a stricter regime with new burdens on registrants, covering more people and more conduct. First in 2006, then in 2011, and now again in 2021.

63. Effective April 1, 1997, the statute's confidentiality protections were weakened. Law enforcement agencies were required to make registry information available to the public (for zip codes within the agency's jurisdiction) during regular business hours. 1996 Mich. Pub. Act 494, § 10(2). The public could view a paper copy of the registry by visiting their local law enforcement agency.

64. In 1999, registry information became available to the public on the internet. 1999 Mich. Pub. Act 85, § 8(2), 10(2)(3).

65. New in-person reporting requirements were imposed, with registrants being required to report quarterly or yearly, depending on their offense. 1999 Mich. Pub. Act 85, § 5a(4).

66. Moreover, the 1999 amendments expanded the list of offenses for which registration was required and the categories of individuals required to register for life; lengthened the penalties for registration-related offenses; required registrants to maintain a driver's license or personal identification card; made registry information on certain juveniles public; required fingerprinting and digitized photographs for registrants; and mandated registration for out-of-state students, people, working in the state, and anyone convicted of a listed offense or required to register in another state or country. *See generally* 1999 Mich. Pub. Act 85.

67. In 2002, registrants were required to report in person when they enrolled, disenrolled, worked, or volunteered at Michigan institutions of higher learning. 2002 Mich. Pub. Act 543, § 4a.

68. Amendments in 2004 required the internet-based public sex offender registry to include photographs. 2004 Mich. Pub. Act 238. In addition, a fee was imposed on registrants. Failure to pay the fee was made a crime. 2004 Mich. Pub. Act 237. The 2004 amendments also modified the registration requirement for individuals in certain diversion programs. 2004 Mich. Pub. Acts 239, 240.

69. The 2006 amendments, effective January 1, 2006, retroactively barred registrants (with limited exceptions) from working, residing, or loitering within 1,000 feet of school property and imposed criminal penalties for noncompliance. 2005 Mich. Pub. Acts 121, 127. In addition, the penalties for registration-related offenses were increased. 2005 Mich. Pub. Act 132. Another amendment, which was also applied retroactively, allowed subscribing members of the public to receive an electronic notification when a person registers or moves into a particular zip code. 2006 Mich. Pub. Act 46.

70. In 2011, SORA was completely overhauled, which triggered litigation in federal and state courts over the last ten years. 2011 Mich. Pub. Act 17, 18.

17

71. First, the 2011 SORA amendments, made effective on April 12, 2011, retroactively imposed extensive reporting requirements, requiring in-person and in some cases immediate reporting of vast amounts of personal information.

72. Second, the 2011 amendments retroactively categorized registrants into tiers. The tier classification determines the length of time a person must register and the frequency of reporting. Tier classifications are based solely on the offense of conviction. Tier classifications are not based on, and do not correspond to, a registrant's actual risk of reoffending or the danger any registrant poses to the public. The tier classifications were also publicly available online.

73. Before 2011, almost three-quarters of Michigan registrants were required to register for 25 years. As a result of the retroactive tier classifications, many registrants had their registration periods extended to life. This, unfortunately, occurred with Doe.

74. There was, and still is, no individualized determination about their risk or whether lifetime registration was warranted, and an estimated 17,000 people had their registration extended to life.

## II. The *Does I* Litigation

75. In 2012, six Michigan registrants (none of whom is the plaintiff in this case) challenged the constitutionality of SORA on numerous grounds. *See Does v. Snyder*, Case No. 2:12-cv-11194 (E.D. Mich. 2012) (*Does I*).

76. The state moved to dismiss. This Court granted the motion in part and denied the motion in part. *See Does #1-4 v. Snyder*, 932 F. Supp. 2d 803 (E.D. Mich. 2013). The dismissal included the plaintiffs' *ex post facto* claim.

77. After discovery, this Court issued two opinions, *Does #1-4 v. Snyder*, 932 F. Supp. 2d 803 (E.D. Mich. 2013), and *Does #1-5 v. Snyder*, 101 F. Supp. 3d 722 (E.D. Mich. 2015). Those opinions held, *inter alia*, that:

   a. SORA's geographic exclusion zones are unconstitutionally vague;

   b. SORA's prohibition on loitering is unconstitutionally vague;

   c. Some of SORA's reporting requirements are unconstitutionally vague;

   d. Some of SORA's internet reporting requirements violate the First Amendment; and

   e. SORA must be read to incorporate a knowledge requirement, so that there is no strict liability for SORA violations.

78. Both sides appealed. The Sixth Circuit held that SORA *is* punishment and that retroactive application of the 2006 and 2011 amendments violated the Ex Post Facto Clause. *See Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016).

79. With respect to plaintiffs' other challenges to SORA, the Sixth Circuit found that "this case involves far more than an Ex Post Facto challenge. And as the district court's detailed opinions make evident, Plaintiffs' arguments on these other issues are far from frivolous and involve matters of great public importance." *Id.* at 706. The Sixth Circuit held, however, that those questions "will have to wait for another day because none of the contested provisions may now be applied to the plaintiffs [in light of the ex post facto violation]." *Id.* The provisions still extended to other registrants.

80. The new SORA now applies many of those very same contested provisions to tens of thousands of registrants.

81. The state defendants petitioned for certiorari. That petition was denied in 2017. *See Snyder v. Does #1-5*, 138 S. Ct. 55 (2017).

82. In January 2018, the district court (on remand) entered a stipulated final judgment, *Does I*, No. 12-cv-11194, that:

   a. declared that retroactive application of SORA's 2006 and 2011 amendments violated the Ex Post Facto Clause of the U.S. Constitution;

   b. enjoined defendants from retroactively applying the 2006 and 2011 SORA amendments against the plaintiffs;

c. enjoined defendants from enforcing *any* SORA provision against one registrant and entirely removed him from the registry because his registration resulted from the "recapture" provisions of the 2011 amendments to SORA, which retroactively imposed SORA on registrants with pre-SORA offenses;

d. removed the other John Does and Mary Doe from the public internet registry, reduced plaintiffs' reporting requirements to quarterly verification of basic information, and set the length of their registration periods to be that required under the pre-2011 SORA (25 years rather than life).

83. The judgment provided that "if the Michigan legislature amends or replaces SORA to implement the Sixth Circuit's holding in *Does #1-5 v. Snyder*, this injunction shall terminate on the effective date of any such amendments or new statute." *Id.*

84. The passage of new legislation does not affect the declaratory judgment in *Does I* that retroactive application of SORA's 2006 and 2011 amendments violated the Ex Post Facto Clause.

## III. The *Does II* Litigation

85. Undeterred, Michigan continued to enforce SORA as written, requiring all registrants other than the *Does I* plaintiffs to comply with provisions of

SORA that both the district court and the Sixth Circuit had held to be unconstitutional.

86. Another lawsuit was then filed to enforce the *Does I* ruling. This subsequent set of litigation is often referred to as "*Does II*." The second amended complaint in that case contained four counts:

    a. A Due Process challenged based on vagueness to the following provisions of SORA:

        i. The prohibition on working within a student safety zone, M.C.L. §§ 28.733–734;

        ii. The prohibition on loitering within a student safety zone, M.C.L. §§ 28.733–734;

        iii. The prohibition on residing within a student safety zone, M.C.L. §§ 28.733, 28.735;

        iv. The requirement to report "[a]ll telephone numbers . . . routinely used by the individual," M.C.L. § 28.727(1)(h);

        v. The requirement to report "[a]ll electronic mail addresses and instant message addresses . . . routinely used by the individual," M.C.L. § 28.727(1)(i); and

        vi. The requirement to report "[t]he license plate number, registration number, and description of any motor vehicle

aircraft, or vessel . . . regularly operated by the individual," M.C.L. § 28.727(1)(j);

b. A due process challenge based on SORA's imposition of a strict liability scheme for violations of the act;

c. A First Amendment challenge based on:

    i. The requirement "to report in person and notify the registering authority . . . immediately after . . . [t]he individual . . . establishes any electronic mail or instant message address, or any other designations used in internet communications or postings," M.C.L. § 28.725(1)(f); and

    ii. The retroactive incorporation of the lifetime registration's requirement to report "[a]ll electronic mail addresses and instant message addresses assigned to the individual . . . and all login names or other identifiers used by the individual when using any electronic mail address or instant messaging system," M.C.L. § 28.727(1)(i); and

d. An Ex Post Facto Clause challenge based on the State's continued enforcement of the 2006 and 2011 amendments.

87. At the time, dozens of cases seeking enforcement of the *Does I* decision had already been filed in both federal and state court.

88. Plaintiffs moved for partial summary judgment as to the ex post facto subclasses in July 2018. *Id.*, Mot. For Partial Summ. J. Over the next year and a half, the court postponed briefing repeatedly to permit ongoing negotiations with state stakeholders about the contours of a new law. *Id.*

89. In May 2019—almost a year after plaintiffs moved for partial summary judgment—the parties, hoping to spur legislative action, proposed and the court then entered a stipulated order granting a declaratory judgment. *Id.*, Stipulated Order for Declaratory J. (May 23, 2019). The judgment declared the 2006 and 2011 amendments to be unconstitutional as to the ex post facto subclasses. *Id.* The court deferred ruling on injunctive relief "to avoid interfering with the Michigan legislature's efforts to address the *Does I* decisions and their findings of constitutional deficiencies with SORA." *Id.* But when the state shut down the legislative work group, plaintiffs moved for summary judgment.

90. On February 14, 2020, in *Does II*, this Court granted plaintiffs' motions for summary judgment on all counts. The order effectively incorporated the holdings of the Sixth Circuit and the district court in *Does I*, as applied to the appropriate subclasses. *See Does II*, 449 F. Supp. 3d 719 (E.D. Mich. 2020).

91. Broadly, this Court found that the provisions which violated the Due Process Clause and First Amendment, and the provisions imposing strict

24

liability, were void and could not be enforced against *any* registrant, prospectively or retroactively. *Id.* at 737–38. As to the ex post facto claim, the court held that the unconstitutional 2011 amendments were not severable from the constitutional parts of SORA, and therefore, absent legislative action, the entirety of SORA could not be enforced against the *ex post facto* subclasses (those whose registrable offense occurred before the effective date of the 2011 amendments, including Doe in this action). *Id.* at 731–33.

92. This Court intended to delay the effective date of the judgment for 60 days to allow the legislature time to pass a new statute that would apply to all registrants, not just post-2011 registrants. *Id.* at 739.

93. Unfortunately, the COVID-19 pandemic began in March 2020. This made it impossible for (1) the state to provide notice of the judgment to registrants, (2) the legislature to meet to work on a new bill, and (3) registrants to obey many of SORA's registration requirements due to state and federal stay-at-home orders.

94. In April 2020, an Interim Order Delaying Entry of Final Judgment, Preliminarily Enjoining Reporting Requirements, and Directing Publication was entered. The order suspended many requirements, including the reporting requirements, verification, school zone, and fee violations. *Does II*, No. 16-cv-13137, Interim Order Delaying Entry of Final J., Preliminarily

Enjoining Reporting Requirements, and Directing Publication (Apr. 6, 2020).

95. This Court entered a final judgment on August 4, 2021, and an amended final judgment on August 26, 2021, that:

    a. Declared the old SORA to be punishment; the *ex post facto* application of the 2006 and 2011 amendments to be unconstitutional; the 2011 amendments to be not severable from the rest of the old SORA; and the old SORA to be null and void as applied to people who committed their offense or offenses requiring registration prior to July 1, 2011;

    b. Permanently enjoined defendants and their agents from enforcing any provision in the old SORA against people who are or will be subject to registration under SORA and who committed their offense or offenses requiring registration prior to July 1, 2011;

    c. Declared unconstitutional and permanently enjoined certain reporting requirements; and

    d. Provided that under the Due Process Clause of the U.S. Constitution, the old SORA must be interpreted as incorporating a knowledge requirement when prosecuting compliance violations.

*Id.*

96. Because the *Does II* case only concerned the constitutionality of the old SORA, the judgment did not enjoin enforcement of the new SORA.

## IV. The *Betts* Litigation

97. While the *Does I* and *Does II* cases were working their way through the federal court system, a parallel criminal case was proceeding through the state courts. *See People v. Betts*, __ N.W.2d __, 2021 WL 3161828 (Mich. July 27, 2021).

98. In *Betts*, the Michigan Supreme Court held that if a registrant's offense occurred before the passage of the July 1, 2011 SORA amendments, then the 2011 SORA amendments are considered to be *ex post facto* punishment as applied to that registrant. *Id.* at *15. The court found the statute's "demanding and intrusive requirements, imposed uniformly on all registrants regardless of an individual's risk of recidivism, were excessive in comparison to SORA's asserted public safety purpose." *Id.* The Court also found that the 2011 amendments were not severable from the rest of the law. *Id.* at *20.

99. The underlying facts, which are similar to Doe's case, are as follows:

  a. Paul Betts, Jr. pleaded guilty to second-degree criminal sexual conduct in 1993, two years before SORA took effect in Michigan.

b. After Betts successfully completed parole, he did not comply with SORA, specifically M.C.L. §§ 28.725(1)(a), (f)–(g), and the prosecutor charged him with violation of SORA's registration requirements.

c. While SORA created a confidential database of those convicted of sex offenses, it was only available to law enforcement at the time of its inception.

d. By 2012, when Betts was originally charged with violating SORA requirements, this database had transformed into a publicly-available online resource.

e. This online public database is precisely what Betts argued caused the retroactive application of the 2011 SORA to violate constitutional *ex post facto* protections.

100.   The court held the following:

a. When applied to registrants whose convictions predate 2011, the 2011 amendments to SORA violate the Ex Post Facto Clause of the Constitution;

b. While the Legislature intended SORA to be a civil regulation rather than punishment, the 2011 amendments' "aggregate punitive effects" completely negated that intention; and

c. Because severability and revival of the non-punitive provisions of the 2011 SORA were inappropriate to remedy a constitutional violation, the 2011 SORA amendments could not retroactively apply to registrants whose criminal acts predate their enactment. *Id.* at *1–*2.

101.   The reasons that the Michigan Supreme Court held that SORA was punishment are as follows:

a. The geographic exclusion zones effectively banished someone from the community;

b. The public internet registry was a form of shaming and ostracism;

c. The registry resembled parole, in that it required a "significant amount of supervision by the state on registrants," *id.* at *23;

d. The exclusion zones and in-person reporting requirements (that for some offenders must occur multiple times per year) were onerous burdens;

e. The amendments promoted deterrence, which is a traditional penological goal; and

f. The law was retributive, meaning that there is no individualized determination of the dangerousness of each registrant and registration is based on the offense alone.

102.   The Michigan Supreme Court did not address the 2021 amendments.

29

## V. The 2021 Amendments, Otherwise Known As the "New" SORA, Which Make Only Minor Changes to the Statute

103.   In March 2020, legislators introduced a new SORA bill. The legislators ignored the work of the legislative work group that had been developing a comprehensive overhaul of SORA that aimed to be consistent with both the constitutional constraints and the social science.

104.   Instead, the newly introduced bill simply repeated many of the features of SORA that had already been held unconstitutional in *Does I* and *II*. *See* H.B. 5679, 100th Leg., Reg. Sess. (Mich. 2020).

105.   Both the Michigan Attorney General and the Michigan State Police submitted comments noting the constitutional deficiencies, with Attorney General Dana Nessel stating that "[t]he bill needs considerably more work if the State is going to avoid future litigation over the constitutionality of its registry." *Does II*, No. 16-cv-13137, Att'y Gen. Comments on H.B. 5679.

106.   In the lame duck legislative session (November through December 2020), both houses of the Michigan legislature passed H.B. 5679, and the Governor signed it on December 31, 2020. 2020 Mich. Pub. Act 295. These amendments went into effect on March 24, 2021.

107.   The new SORA makes minimal changes to the structure, substance, and overall requirements of SORA, and is, if anything, more complex, vague, and harder to understand than the 2011 version.

108.   The new SORA retains the identical tier system, the identical lengthy/lifetime registration periods, and the virtually identical onerous reporting requirements and online public registry, all without any individual assessment of risk to determine if the new SORA's severe burdens are warranted.

109.   The new SORA remains a conviction-based law. Regardless of the circumstances of the offense, the passage of time, and the proven rehabilitation or incapacity of a registrant, there is, in almost all cases, no path off the registry.

110.   The new SORA makes no changes to the offenses that require registration. The new SORA continues to require people who had consensual sex with younger teens or committed other less serious offenses to register—retaining lifetime registration in most cases. *See generally* M.C.L. § 28.722(r), (t), (v). The new SORA continues to require sex offender registration for people who were never convicted of a sex offense. *See* M.C.L. § 28.722(r)(iii), (r)(x), (v)(ii), v(iii), (v)(viii). The new SORA continues to require registration of developmentally and physically disabled persons who may lack the ability to comply with the Act's complex requirements, or who may have limitations that make it effectively impossible for them to reoffend. Indeed, the only substantive change to who

must register under the new SORA is that the law no longer applies to a very small number of people whose offenses were later expunged or set aside, or who successfully completed a diversion program under HYTA. M.C.L. § 28.722(a)(i)–(ii).

111. The new SORA continues to classify registrants into three tiers. Tier assignments are determined solely by the offense of conviction and govern both the number of years a person must register and the frequency of reporting. People are assigned to 15-year, 25-year, and lifetime registration without any individualized review at any time. *See generally* M.C.L. §§ 28.722(q)–(v), 28.725(11)–(14), 28.725a.

112. The new SORA retains virtually all of the 2011 SORA amendments and continues to apply them retroactively to pre-2011 registrants, despite the Sixth Circuit's clear holding that those amendments cannot be retroactively applied.

113. The new SORA continues the retroactive extension of pre-2011 registrants' registration terms (e.g., lengthening the 25-year registration period to life) that was imposed under the 2011 SORA amendments. The new SORA also maintains the 2011 amendments' "recapture" provision, which imposes all of SORA's burdens on people with pre-SORA sex offenses (i.e., offenses from 1995 or earlier) if they are convicted of any

non-sexual felony, even though they have not been convicted of another sex offense in a quarter century. M.C.L. § 28.723(1)(e).

114.   The new SORA also continues the extensive reporting requirements that were retroactively imposed under the 2011 SORA amendments. Those include the duty to report within three business days any changes to extensive personal information, such as changes to addresses, employment, schooling, vehicle information, email addresses, internet identifiers,[4] and telephone numbers. M.C.L. §§ 28.724a, 28.725, 28.727. The new SORA continues to require registrants to report to law enforcement in advance if they travel anywhere for more than seven days, including 21 days' advance notice for foreign travel. M.C.L. § 28.725(2)(b), (8). While some limited changes to a registrant's information can now be reported by mail, many changes must still be reported in person. *See* M.C.L. §§ 28.724a, 28.725(1)–(2), 28.727.

115.   Under the new SORA, Tier II and III registrants continue to be publicly branded as sex offenders on the public registry, which publishes their pictures and extensive personal information about them, including their weight, height, hair and eye color, tattoos/scars, birthdate, home address, employer address, school address, and vehicle information. *See* Senate

---

[4] The reporting requirements for email addresses and internet identifiers does not apply to pre-2011 registrants. M.C.L. § 28.725(2)(a).

Substitute for H.B. 5679, 100th Leg., Reg. Sess. (Mich. 2020) (striking §

8(3)(e)). Tier-level information is no longer posted, which makes everyone

on the public registry appear to be equally dangerous. M.C.L. §

28.728(3)(e).

116.   Under the new SORA, registrants must continue to pay an annual fee of

$50.00. M.C.L. § 28.725a(6).

117.   Many of the new SORA's requirements remain incredibly unclear. The

legislature amended certain provisions that were held to be

unconstitutionally vague in *Does I* and *Does II*, but the new language is as

vague as—if not more vague than—the old language, appearing to require

reporting of events going back decades.

118.   The new SORA continues to impose lengthy prison terms of up to ten

years for non-compliance, as well as mandatory revocation of probation,

parole, or youthful-trainee status for even technical non-compliance or

failure to pay the registration fee. M.C.L. § 28.729. The only change to this

section is that, in response to the *Does I* and *Does II* rulings, all SORA

compliance violations must be shown to be willful. *Id.*

119.   The new SORA bars virtually all registrants from petitioning for removal

from the registry, meaning that for most, there is no path off the registry,

regardless of demonstrated rehabilitation or current risk. The statute only

allows certain limited Tier I registrants and juveniles who meet strict criteria to petition for removal after 10 and 25, respectively. M.C.L. § 28.728c(1), (2), (12), (13). Other registrants who meet the same strict criteria are not allowed to petition for removal.

120. The new SORA does eliminate the "geographic exclusion zones" that were adopted in 2006 and barred registrants from living, working or "loitering" within 1,000 feet of a school. But the practical impact of this change is limited because the state publicly brands people as sex offenders on the internet, posts their home and employment addresses, and even provides a mapping tool so that anyone using the internet can see exactly where registrants live and work. The result is that registrants continue to have extreme difficulty finding and keeping housing and employment.

## VI. The New SORA Imposes Devastating Burdens on Doe.

121. The new SORA imposes a vast array of obligations, disabilities, and restraints that govern every aspect of Doe's life. The new SORA compels Doe to continually provide a great deal of information about himself to law enforcement, much of which must be reported in person and/or within three days. This burden will last a lifetime. The new SORA subjects Doe to continuous surveillance and supervision, and stigmatizes him as dangerous to his community without any individualized assessment. In addition, the

new SORA severely limits his ability to find housing and employment; to get an education, if he so chooses; to travel; to engage in free speech, including use of the internet; to be free from harassment and stigma; and to understand what is required of him under the statute.

122. Finally, registration under the new SORA triggers a vast array of additional obligations, disabilities, and restraints under federal, state, and local laws (as well as private policies barring or limiting Doe from access to goods or services available to the public), all without any individualized assessment or showing either that Doe poses a danger or that the restrictions make communities safer.

**Compelled Speech**

123. Doe is compelled under threat of criminal prosecution to provide extensive information to the state, including:

   a. Legal name and any aliases, nicknames, ethnic or tribal names, or other names by which the individual is or has been known. M.C.L. § 28.727(1)(a).

   b. Social Security number and any Social Security numbers or alleged Social Security numbers previously used. M.C.L. § 28.727(1)(b).

   c. Date of birth and any alleged dates of birth previously used. M.C.L. § 28.727(1)(c).

36

d. The address where the individual resides or will reside. M.C.L. § 28.727(1)(d).

e. The name and address of any place of temporary lodging used or to be used during any period in which the individual is away, or is expected to be away, from his or her residence for more than 7 days, including the dates when the temporary lodging is used or to be used. M.C.L. § 28.727(1)(e).

f. The name and address of each employer, including any individual who has agreed to hire or contract for the individual's services. M.C.L. § 28.727(1)(f).

g. The general areas where the individual works and the normal travel routes taken by the individual in the course of his or her employment if the individual lacks a fixed employment location. M.C.L. § 28.727(1)(f).

h. The name and address of any school being attended, or any school that has accepted the individual as a student that he or she plans to attend. M.C.L. § 28.727(1)(g).

i. All telephone numbers, including but not limited to residential, work and mobile phone numbers, registered to or used by the individual. M.C.L. § 28.727(1)(h).

37

j. The license plate number and description of any vehicle owned or operated by the individual. M.C.L. § 28.727(1)(j).

k. Driver's license number or state personal identification card number. M.C.L. § 28.727(1)(k). A digital copy of the individual's passport and other immigration documents. M.C.L. § 28.727(1)(l).

l. Occupational and professional licensing information, including any license that authorizes the individual to engage in any occupation, profession, trade, or business. M.C.L. § 28.727(1)(m).

m. Written documentation of employment status, contractual relationship, volunteer status, or student status when an individual enrolls or discontinues enrollment at an institution of higher education. M.C.L. §§ 28.724a(5), 28.727(1)(r).

n. A complete physical description of the individual. M.C.L. § 28.727(1)(o).

124. Tier III registrants, like Doe, must report this information every three months. M.C.L. § 28.725a(3).

125. The new SORA also requires registrants to provide a photograph, fingerprints, and palm prints. If registrants' appearance changes, they must update the photograph within seven days. M.C.L. §§ 28.725a(5), (8), 28.727(1)(q).

126. In addition to reporting in person at regular intervals, registrants living in Michigan must report within three business days in person, or in another manner prescribed by the MSP, whenever certain information changes. M.C.L. §§ 28.724a, 28.725(1)-(3).

127. Registrants must report in person within three days, either because the statute requires it or the local jurisdiction does, whenever the registrant:

    a. Changes or vacates his or her residence or domicile. M.C.L. § 28.725 (1)(a).

    b. Changes his or her place of employment. M.C.L. § 28.725(1)(b), (3).

    c. Discontinues employment. M.C.L. § 28.725(1)(b). Again, it is unclear whether these requirements apply to volunteer work.

    d. Changes his or her name. M.C.L. § 28.725(1)(d).

    e. Enrolls as a student. M.C.L. § 28.724a(1)(a), (3)(b).

    f. Discontinues enrollment as a student. M.C.L. § 28.724a(1)(a), 28.724a (3)(b).

    g. If, as part of his or her course of studies, the individual is present at any other location in Michigan or throughout the United States. M.C.L. § 28.724a(1)(b), (3)(b).

h. If the individual discontinues his or her studies at any other location in Michigan or throughout the United States. M.C.L. § 28.724a(1)(b), (3)(b).

i. Before the individual changes his or her domicile or residence to another state. The new state and, if known, the new address must be reported at the time of reporting. M.C.L. § 28.725(7).

128. In addition, registrants living in Michigan, like Doe, must report within three days:

a. Any intention to travel for more than seven days. M.C.L. § 28.725(2)(b).

b. Any change in vehicle information. M.C.L. § 28.725(2)(a).

c. Any change in telephone numbers registered to or used by the individuals. M.C.L. § 28.725(2)(a).

129. In an apparent attempt to make it easier for prosecutors to establish the willfulness requirement that the *Does I* and *Does II* courts said is constitutionally required to establish a SORA violation, the MSP amended the language of the Explanation of Duties form. Registrants must now agree and sign that: "I have read the above requirements and/or had them read to me and I *understand* my registration duties." (Emphasis added.)

130. Similarly, registrants who update information using the Michigan Sex Offender Registry Mail-in Update Form, must sign that "I have read the 'Explanation of Duties to Register as a Sex Offender' listed on pages two and three of this form and/or had them read to me and I *understand* my registration duties." (Emphasis added.)

131. It is a crime for registrants not to sign the Explanation of Duties, M.C.L. §§ 28.727(4), 28.729(3). Thus, registrants must either attest that they understand the new SORA's complex requirements—even if they do not—or face prosecution.

132. Compelling registrants to attest that they understand the new SORA is unnecessary. Prior to 2021, registrants were simply required to acknowledge having read the Explanation of Duties form, but were not forced to attest to their understanding of the law.

133. Because registrants must complete their verifications in person, and report many changes of information in person, the new SORA not only compels them to speak, but also requires them to do so in particular places—typically in busy police station lobbies where they can be heard by others—at particular times.

134. Not every law enforcement agency in Michigan handles registration. Some agencies that do handle registration only allow reporting at specific

times. Some registrants must travel long distances to report or must wait in long lines when they report. The process of registering even a simple change of information can sometimes take hours, and registrants may need to take considerable time off work to report.

135.   Defendants compel Doe to provide information and then use that information to stigmatize him and to broadcast a state-endorsed online message that they are dangerous sex offenders. Doe vehemently disagrees with the message that the government broadcasts about him.

136.   Doe has attempted on numerous occasions to report and comply with fingerprinting requirements. He is typically told that the person fingerprinting is either off-duty or unavailable, but he still shows up when he is required to by statute. This has never caused him any issues until one evening.

137.   In 2018, three state trooper vehicles pulled up to Doe's home after dark with a mobile fingerprinting device. He was told he had not been fingerprinting, so they arrived at his home, and his neighbors were gawking out their windows.

**Ongoing Reporting, Surveillance and Supervision**

138.   The new SORA's reporting, surveillance, and supervision requirements not only compel Doe to speak, but are similar to and, in fact, in many ways

42

more restrictive and onerous than, the reporting, surveillance, and supervision that he experienced while on parole.

139. Like probation or parole, the new SORA requires Doe to report to a criminal justice agency, namely his local law enforcement agency, the sheriff's office, or the MSP. M.C.L. § 28.722(m). Doe reports to his local MSP branch office.

140. As a result of the new SORA's three-day reporting requirements, coupled with the verification requirements, many registrants, like Doe, must report in person to law enforcement with a frequency that is similar to, and often greater than, their reporting obligations when they were on probation or parole. Indeed, the new SORA's requirement that many changes be reported within three business days, often in person, is a level of reporting that far exceeds what most registrants experienced while they were serving their sentences on probation or parole. Moreover, Doe must report significantly more information than what he was required to report when on parole.

141. Probation and parole conditions are often relaxed during the course of supervision and can be challenged through the MDOC grievance procedures. Probation and parole requirements typically last two years. SORA requirements do not decrease over time, cannot be contested, and last 15 years to life.

142.   The public sex offender registry includes a "submit a tip" button on each registrant's page. Information provided by the public through that system is sent to the registrant's local law enforcement agency for follow-up.

143.   Prior versions of the SORA database included investigative screens for each registrant, which are used to document citizen tips, track follow-up law enforcement actions, and track the progress of investigation into registrants. The MSP recently moved the SOR database to a new platform. Upon information and belief, the new platform likewise includes investigative screens for each registrant, which are used to document citizen tips, track follow-up law enforcement actions, and track the progress of investigation into registrants.

144.   The MSP, county sheriff's offices, the U.S. Marshalls, and local law enforcement agencies regularly engage in a variety of sweeps to determine SORA compliance. These operations include random residence checks to determine if a registrant is staying at the reported location.

145.   Law enforcement agencies also conduct sweeps targeted at registrants deemed non-compliant, a status that can simply reflect failing to pay a fee or turn in a form.

146.   When Doe and his wife moved to a new home in 2018, they became aware that state troopers were alerting their neighbors, by showing up in

person on their doorsteps, that a registrant had just moved into the area. This resembles a compliance check that is typically conducted when an individual is on parole or probation.

## Limitations on Access to Housing

147.   The new SORA severely limits registrants' access to housing, increases the likelihood of homelessness, and can prevent registrants from living with their families.

148.   The online registry sends a clear message to the public that all registrants are dangerous. Therefore, many landlords will not rent to anyone on the registry.

149.   In addition, the new SORA requires posting of registrants' addresses on the public online registry. M.C.L. § 28.728(2)(c). As a result, landlords also refuse to rent to registrants because they do not want their properties to appear on the registry. This problem is exacerbated by the public registry interface, which allows users to easily map all registrants living in a particular area.

150.   Although Doe's registration status has not affected his access to housing per se, alerting his neighbors when he moves to a new area effectively outcasts him and makes his living environment uncomfortable.

## Limitations on Access to Employment

151.   The new SORA severely limits registrants' access to employment.

152.   Under the new SORA, registrants' employment information and work addresses are posted on the public online registry. M.C.L. § 28.728(2)(d). The posting of employer information creates a powerful disincentive for employers to hire registrants, which is exacerbated by the mapping function on the website that allows users to easily determine if an employer has hired registrants. For example, employees who search their work address will immediately find out whether any colleagues are on the registry.

153.   From 2012 to 2020, Doe worked at Home Depot. His immediate management team was aware that he was required to register as a sex offender and they had no qualms with that status. In fact, Doe was a model employee and had an excellent employment record with the company.

154.   Unfortunately, his public registration status was readily accessible to any customers or coworkers.

155.   On two separate occasions, Doe arrived at work to find a printout of his registry profile pasted throughout the store—on shelves, registers, walls, etc. The store was never able to locate the individual responsible for doing this.

156.   Doe also left work one day to find his tires slashed.

157.   Doe's employment was ultimately terminated by the corporate office, for allegedly falsifying documents and failing to disclose his registration status.

The timeline of this dismissal as well as email communications showing that Doe was unable to retrieve his case file from Human Resources is attached to this Complaint. *See* Ex. 2, Home Depot Dismissal Documents.

158.   In the last two years, Doe has been offered positions at other companies that he lost due to his registration status. *See* Ex. 3, Advanced Disposal Non-Hire Email; Ex. 4, Floor Decor Non-Hire Letter; Ex. 5, Aramark Offer Letter; Ex. 6, Aramark Non-Hire Letter.

159.   Doe has remained unemployed since June 2020.

## Limitations on Access to Education

160.   Being on the registry also makes it more difficult for registrants to get an education because they must disclose their registration status to the institutions.

161.   Doe received his associate's degree in business administration in 1983, before his convictions. He has been unable to obtain a job in this field.

162.   If he ever wanted to complete his bachelor's degree, he would be limited in his options because he would be at the mercy of the higher learning institution's opinions and policies about his registration status.

## Limitations on Travel

163.   Being on the registry also severely restricts registrants' ability to travel.

164. Registrants must provide advance notice when they intend to travel anywhere for more than seven days. They must tell the police where they are going, where they will stay, how long they will be there, and when they will return. M.C.L. §§ 28.725(1)(e); 28.727(1)(e).

165. Registrants must report in person at least 21 days before they travel outside the U.S. for more than seven days. M.C.L. § 28.725(8).

166. In addition, registrants must plan any travel so that they are able to register in person during their required verification periods. Doe, as a Tier III registrant with an April birthday, is required to report quarterly in January, April, July, and October. He cannot travel for the entirety of one of those months, because he would need to appear in person at the police station during that time.

167. If registrants travel, they must comply with any applicable sex offender registration laws in other jurisdictions. Because sex offender laws are exceedingly complex and vary from state to state, it is extremely difficult to obtain accurate information about either affirmative reporting obligations (such as registering one's presence in a state) or prohibitions on ordinary behavior (such as visiting a library or park) in other jurisdictions.

**Public Stigmatization, False Information, and Social Engagement**

168.   Describing someone as a "sex offender" is intensely stigmatizing and leads the public to view the person with high levels of fear and disgust. Labeling someone as a "sex offender" also leads the public to assume that the person is a pedophile or sexual predator, and poses a current high risk of committing a new sex offense.

169.   Being publicly branded as a sex offender is far worse than simply having an old conviction because it conveys the message of *current* dangerousness. As a result, registrants suffer severe housing, employment, social, and other consequences that they would not experience based solely on the fact that they have a criminal record.

170.   As a result of the public online registry, registrants and their families are subjected to harassment, social ostracism, and even threats of violence.

171.   In addition to the incidents described above with the police and his employment at Home Depot, Doe's registration status directly affected his relationship with his ex-wife and his three sons.

172.   Doe's ex-wife filed for divorce in 2008, more than a decade after Doe's release from prison. This was, in large part, due to the strain that Doe's status as a "sex offender" put on their marriage. *See* Ex. 7, Judgment of Divorce.

173.   Doe has three sons, all now in their 30s. When they were in school, their classmates learned of Doe's registration status and harassed his sons.

174.   Doe no longer has a relationship with his two youngest sons.

### Criminal Enforcement of SORA

175.   The new SORA imposes penalties of up to ten years imprisonment for violations of the Act. M.C.L. §§ 28.729(1).

### Vagueness

176.   Like the old SORA, many of the requirements of the new SORA, including requirements for reporting personal information, are so complex and vague that Doe is unable to know whether or not he is in violation of the law, and is therefore unable to comply with it.

177.   Law enforcement officers who enforce the act likewise do not understand what information must be reported, or what changes in information subject registrants to reporting requirements. Different law enforcement agencies in different places apply the new SORA's requirements differently. The new SORA's requirements for reporting personal information are so vague that prosecutors and police agencies cannot and do not enforce the law consistently.

178.   **Phones, Internet, and Cars**: In *Does I* and *Does II*, the district court held that SORA's provisions requiring reporting of telephone numbers,

50

electronic mail, and instant message addresses, and vehicle information were unconstitutionally vague. *Does I*, 101 F. Supp. 3d at 686–90; *Does II*, 449 F. Supp. 3d at 736, 738. In passing SORA 2021, the legislature replaced those provisions with language that is, if anything, even vaguer.

179.   SORA 2021 now requires registrants to report all telephone numbers "registered to . . . or used by the individual," all electronic mail addresses and internet identifiers "registered to or used by the individual,"[5] and all vehicles "owned or operated by the individual" or "used by the individual."12 M.C.L. §§ 28.725(2)(a), 28.727(h)–(j). Any change in such information must be reported within three business days. M.C.L. § 28.725(2)(a).

180.   Doe is confused about whether he must report every single phone number or vehicle that he has ever used. For example, Doe does not know whether, if he uses a friend's cell phone to make a quick call because his own phone is dead, he must report it within three days. He also does not know whether, if he borrows a car or gets a loaner while his own is in the shop, he must tell the police. He also does know how far back in time these requirements apply: because there is no time limit in the law, arguably a phone or car used

---

[5] This provision of the statute does not apply to Doe because he is a pre-2011 registrant.

once in the past must now be registered because it was "used by the individual."

181.   Although Doe as a pre-2011 registrant no longer has to report any email addresses or internet identifiers, he was never informed in the 10 years the 2011 amendments were in effect that he had to.

182.   **Employment**: Doe is also confused about reporting employment, which requires in-person reporting within three business days. For example, M.C.L. § 28.725(1)(b) requires immediate reporting if "the individual changes his or her *place of employment*, or employment is discontinued." (Emphasis added.) This provision causes confusion because it does not use the word "employer" or "employment" but instead targets the "place."

183.   The same is true if there is a temporary closure, layoff, or strike; he cannot and does not know if he must report that his "employment is discontinued," if only temporarily. The uncertainty creates a constant fear that if he is stopped by police for any reason, or when he goes for his periodic registration update, that he will be accused of a violation.

184.   M.C.L. § 28.722(d) does not define "employer" or "employment," but defines "employee" to mean "an individual who is self-employed or works for any other entity as a full-time or part-time employee, contractual provider, or volunteer, regardless of whether he or she is financially

compensated." But M.C.L. § 28.727(1)(f), in contrast, defines "employer" to include "any individual who has agreed to hire or contract with the individual for his or her services."

185.  Doe cannot and does not know, when he shovels a disabled neighbor's walk or mow the neighbor's lawn, if he has subjected himself to the immediate reporting requirements for employment. Nor does he know, when the neighbor decides to pay them to do the chore, if he must now report the neighbor's name and address within three days as an "employer."

186.  **Nicknames, Addresses, and Physical Descriptions**: The new SORA requires Doe to report his "legal name and any aliases, nicknames, ethnic or tribal names, or other names by which the individual is *or has been* known." M.C.L. § 28.727(1)(a) (emphasis added). Read literally, this means that if fourth-grade classmates called you "Slick," or if 20 years ago Navy shipmates called you "Gunner," you are obligated to report that information to the police. To require this level of detail from the beginning of time to the present all but guarantees that all registrants are non-compliant all the time—which is how Doe feels.

187.  Doe must report his primary residence, but the new SORA also requires him to report "The name and address of any place of temporary lodging used *or to be used* by the individual during any period in which the individual is

away, *or is expected to be away*, from his or her residence for more than 7 days. Information under this subdivision must include the dates the lodging is used or to be used." M.C.L. § 28.727(1)(e) (emphasis added).

188.   This section creates a nightmare of uncertainty for the prospective traveler. Doe cannot and does not know at what point tentative travel plans become a mandatory SORA reporting duty, because the phrases "to be used" or "expected to be away" are so vague. The predictable result is that Doe almost never leaves home for more than seven days, due to the risk of compliance violations.

189.   The problem is compounded by M.C.L. § 28.725(2)(b), which requires three-day reporting if a registrant "intends to temporarily reside at any place other than his or her residence for more than seven days." Again, Doe cannot and does not know at what point his own vague plans ripen into an immediate reportable "intent." And if his plans change the day before (or after) departure, he cannot and does not know if he must now register his new plans within three business days.

190.   The text of the provision is also unclear. Doe cannot and does not know if the law means if he plans to stay in one place for more than seven days or intends not to stay in their primary residence for more than seven days—a big difference. (The issue is whether the "more than seven days" modifies

54

"place" or modifies "residence.") Doe cannot and does not know if he must register under this provision if he plans to hike part of the Appalachian Trail, or travel by car with unknown nightly stays in different locations.

191.   **Institutions of Higher Education**: The new SORA defines "institution of higher education" to mean "1 or more of the following: (i) A public or private community college, college, or university. (ii) A public or private trade, vocational, or occupational school." M.C.L. § 28.722(h). The latter provision is unclear. Doe cannot and does not know if he can, without registering, take (for example) cooking classes offered by a restaurant or trade association, carpentry classes offered privately but using a community college's woodshop, or certificate classes, e.g., to get a real estate license. Doe cannot and does not know at what point a series of classes or a program of instruction becomes a "private trade . . . school."

192.   **MSP and Law Enforcement Communications**: In March 2021, the MSP sent a letter to registrants regarding their obligations under SORA 2021. The letter does not provide a complete description of a registrant's duties under SORA 2021. The letter is incomprehensible to ordinary readers, and even lawyers cannot be sure based on the letter what registrants' obligations are under the statute.

193.  The MSP did not track whether registrants received the letters or whether a registrant's letter was returned. Many registrants did not get the letters, including Doe.

194.  After passage of SORA 2021, the MSP also updated the Explanation of Duties form which is supposed to be provided to registrants when they report. The Explanation of Duties form fails to provide clear or complete information about a registrant's duties.

195.  Doe fears he will violate the new SORA's requirements because he does not understand exactly what he must do, as well as what he cannot do.

196.  Doe's experience has been that when he asks law enforcement about his reporting obligations, law enforcement officials often do not know the answer, or provide conflicting information.

197.  For example, Doe has not been required to pay an annual registration fee in years. He was also recently informed that he did not have to keep showing up to the police post, because he would not be required to register much longer. According to the new SORA, he still does have to register. He fears that this conflicting information he is receiving from MSP will eventually catch up with him and result in a violation.

198.  When registrants are uncertain about what SORA means, they err on the side of caution. Rather than risk prosecution for a possible violation, they

self-police by assuming the worst, to avoid any chance they will be accused of wrongdoing and sent to jail or prison. As a result, the statute's vagueness and complexity have an outsized limiting effect on Doe's behavior across the board.

## VII. The New SORA Continues to Retroactively Apply the 2011 Amendments

199.   In *Does I*, the Sixth Circuit held that "[t]he retroactive application of SORA's 2006 and 2011 amendments to Plaintiffs is unconstitutional, and it must therefore cease." *Does I*, 834 F.3d at 706. In *Does II*, the district court applied that holding to all registrants whose registrable offenses predated July 1, 2011 (the effective date of the 2011 amendments). *Does II*, No. 16-cv-13137, Am. Final J.

200.   Although the new SORA eliminated the geographic exclusion zones that were added to the statute in 2006, the new SORA keeps in place virtually all of the 2011 amendments to SORA and continues to apply the 2011 amendments retroactively to pre-2011 registrants, despite the Sixth Circuit's holding that retroactive application of the 2011 amendments violates the Ex Post Facto Clause and must cease.

201.   The new SORA retains the 2011 amendments' retroactive classification of registrants into tiers based solely on their offense of conviction without any individualized risk assessment, with the tiers determining the number of

years that they must register and the frequency of reporting. M.C.L. §§ 28.722(s)–(v), 28.725(11)–(14).

202.   The new SORA maintains the retroactive extension of registration periods created by the 2011 amendments' tier classifications. Under the 2011 amendments, people who previously had been required to register for 25 years, and who were retroactively assigned to Tier III, had their registration periods extended to life. There was no individualized determination about their risk or whether lifetime registration was warranted. Doe was unfortunately lumped into this group, and has now had his punishment extended for a lifetime.

203.   Data provided in *Does I* showed that before SORA's 2011 amendments, almost three-quarters of Michigan's registrants were required to register for 25 years. After the 2011 amendments retroactively classified registrants into tiers, almost three-quarters of registrants were required to register for life. There were 11,313 lifetime registrants before the 2011 amendments and 28,680—or 17,367 more—after those amendments were implemented. Does I, No. 12-cv-11194, Joint Statement of Facts.

204.   The new SORA retains the requirements (from the 2011 amendments) for reporting of vast amounts of personal information, including names, nicknames, Social Security number, date of birth, addresses, employer

information (including temporary jobs and routes of travel for non-stationary employment), schools attended or schools the registrant plans to attend, telephone numbers, internet information, vehicle information, driver's license and personal ID card information, passport and immigration documents, and occupational and professional licensing information. M.C.L. § 28.727. The new SORA continues to require that registrants appear in person for verifications (quarterly, twice-yearly or annually, depending on tier). M.C.L. § 28.725a(3). The new SORA also retains the requirement in the 2011 amendments for advance notice for travel of more than seven days. M.C.L. §§ 28. 727(1)(e), 28.725(8). All of these requirements continue to be applied retroactively to pre-2011 registrants like Doe, with the exception of the reporting requirements for email and internet identifiers. M.C.L. §§ 28.725(2)(a), 28.727(1)(i).

205. Indeed, the new SORA appears to require reporting of even more information. The 2011 statute required reporting of "telephone numbers . . . routinely used by the individual" and vehicles "regularly operated by the individual." M.C.L. § 28.727(1)(h), (j). In the new SORA, the legislature chose to address the vagueness concerns associated with the modifiers "routinely" and "regularly" not by limiting reporting to a person's own phone and vehicles, but by adopting a new blanket requirement to report

every single use of a phone or vehicle ever. M.C.L. § 28.727(1)(h), (j) (2021).

206.  The new SORA also retains the 2011 amendments' requirement for extensive and frequent reporting of even minor changes to information. The new SORA replaces the requirement to "immediately" report with a requirement to report within three business days. But that is exactly how "immediately" was defined in SORA 2011, so the change is not substantive but cosmetic. *Compare* M.C.L. § 28.722(g) (2020), *with* M.C.L. § 28.725(1) (2021).

207.  The new SORA mandates in-person reporting for certain changes, and in other instances provides that updates can be made "in person, or in another manner as prescribed by the [MSP]." M.C.L. § 28.725(1). To Doe's knowledge, the MSP has not issued any formal guidelines or policies regarding which of these updates must be made in person and which in some other manner they have prescribed. However, based on a letter sent by the MSP to registrants in March 2021 and the Explanation of Duties that is supposed to be provided to registrants when they report, it appears that MSP still requires many of those updates to be made in person, but that a few can be made by submitting a form.

208. Changes that must be reported in person within three business days—either because the statute requires it or because the MSP has prescribed it—include residential address changes, starting or discontinuing employment, as well as name changes, enrolling or discontinuing enrollment as a student, being present as a student in other locations in Michigan or the U.S., and moving to a new state. Updates that can be made by submitting a form include travel plans, and changes to vehicles and phones. Doe chooses to make each update in person to avoid confusion, but it seems as though that has just created more confusion.

## CLAIMS FOR RELIEF

### COUNT I: Violations of the Ex Post Facto Clause

209. The new SORA imposes punishment, and its retroactive application to people whose offense requiring registration was committed before July 1, 2011, violates the Ex Post Facto Clause of the U.S. Constitution, art. I, § 10, cl. 1, because it makes more burdensome the punishment imposed for offenses committed prior to that date.

210. The Sixth Circuit held in *Does I*, 834 F.3d 696, that the old SORA imposed punishment, and that its retroactive application violates the Ex Post Facto Clause. The Court specifically held that retroactive application of the

2006 and 2011 amendments "is unconstitutional, and it must therefore cease." *Id.* at 706.

211. The district court in *Does II*, 449 F. Supp. 3d at 726, 737–38, applied the Sixth Circuit's holding to a class of all Michigan registrants with pre-2011 offenses, holding that the retroactive application of the 2006 and 2011 amendments violates the Ex Post Facto Clause.

212. The Michigan Supreme Court in *Betts*, 2021 WL 3161828, likewise held that the retroactive application of the 2011 amendments violates both the federal and Michigan constitutional prohibitions on ex post facto laws.

213. The new SORA, while largely eliminating the 2006 amendments, retains virtually all of the SORA 2011 amendments.

214. The new SORA continues to retroactively apply almost all of the 2011 amendments to pre-2011 registrants.

215. Under the Sixth Circuit's decision in *Does I* and the district court's decision in *Does II*, the 2011 SORA amendments cannot be retroactively applied to registrants whose offenses predate those amendments.

216. The retroactive application of the new SORA to registrants whose offense requiring registration was committed before July 1, 2011, violates the Ex Post Facto Clause absent an individualized, periodic determination that the

person presents such a high risk to public safety that the new SORA's burdens are justified.

217. As the Michigan Supreme Court found in *Betts* and the federal district court found in *Does II*, the 2011 SORA amendments cannot be severed because the unconstitutional portions are so entangled with the remainder of the statute that they cannot be removed without adversely affecting the operation of the Act. *See Betts*, 2021 WL 3161828, at *20; *Does II*, No. 16-cv-13137, Am. Final J. As a result, there is no statute in effect that lawfully imposes restrictions and obligations onto Doe.

218. The defendants are unlawfully requiring Doe to register as a sex offender and to comply with SORA, even though that statute is null and void as applied to him. Doe successfully completed his terms of imprisonment and parole, and his punishment should have ceased when he was discharged from parole in 1999. *See* Ex. 8, Verification of Incarceration.

## COUNT II: Lack of Individualized Review (Due Process and Equal Protection)

219. The Supreme Court has not decided what standard of review should apply to sex offender registration. *See Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 10 (2003) (Souter, J., concurring) ("Today's case is no occasion to speak [to] . . . the standard of scrutiny that might be in order" when considering challenge to registration.).

220.   Even assuming that the standard is rational basis, a "more searching form" of rational basis review applies when a law exhibits "a desire to harm a politically unpopular group." *Lawrence v. Texas*, 539 U.S. 558, 580 (2003) (O'Connor, J., concurring); *see also U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973) ("[If] 'equal protection of the laws' means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a legitimate governmental interest."). "Rational basis with bite depends on the idea that governmental 'animus' alone is never enough to sustain legislation." Kenji Yoshino, *The New Equal Protection*, 124 Harv. L. Rev. 747, 763 (2011).

221.   The Sixth Circuit has described this more searching standard as an "exacting" rational relationship standard. *Bannum, Inc. v City of Louisville*, 958 F.2d 1354, 1360 (6th Cir. 1992). "Negative attitudes" and "unsubstantiated" fears about a group cannot provide a rational basis for legislation; rather "some data reflecting the extent of the danger must exist." *Id.* at 1360–61 (first and second quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985)).

222.   The new SORA, like its predecessors, is grounded in animus—based on myths and unsubstantiated fears—towards people who have committed sex offenses.

223. Because the new SORA does not increase—but rather undermines—public safety, it is not rationally related to its purported public safety goals, and cannot survive any level of review.

224. Even if some aspects of the new SORA could be deemed rationally related to public safety concerts about some individuals who are a *present* danger to the community, the new SORA's gross excessiveness in expending enormous resources to impose massive restrictions—in most cases for life—on the liberty of a large number of people who present no danger to the public is irrational and rooted in animus.

225. The restrictions imposed by the new SORA are grossly disproportionate to any legitimate public safety concern. The new SORA criminalizes ordinary behavior (that is not criminal for non-registrants) and imposes wide-ranging burdens on a disfavored group without providing normal procedural protections.

226. Specifically, the failure to provide any mechanism for individualized review or opportunity for removal from the registry in the vast majority of cases, coupled with extremely long or lifetime registration periods, reflects animus, rather than a rational approach to supervising people who are believed to be a present danger to the public.

227.   The new SORA cannot survive any level of review because imposing such extensive restrictions without any individualized review or opportunity for removal is not rationally related to the state's public safety objectives.

## COUNT III: Mandatory Reporting Requirements and Compelled Speech
### (First Amendment)

228.   The new SORA compels speech, requiring registrants to report extensive information, often in person and within three business days.

229.   These requirements are imposed without any individualized review, last for life in most cases, and have a chilling effect on registrants' constitutionally protected rights to free speech and association.

230.   The information registrants are compelled to provide feeds directly into the state's public registry, and is used by the state to craft a widely disseminated, highly-stigmatizing message that registrants are dangerous sex offenders whom the public should fear.

231.   The new SORA forces registrants to contribute to speech about themselves.

232.   Doe vehemently disagrees with the government's message that they are all dangerous sex offenders.

233.   By requiring frequent, time-consuming, and humiliating reporting to law enforcement, and wasteful visits in Doe's case, the new SORA's compelled disclosure requirements also severely restrict registrants' autonomy.

234. The public disclosure of information registrants are compelled to provide subjects them to harassment, threats, social ostracization, housing instability/ homelessness, loss of employment, and other harms.

235. The vast majority of information that registrants are compelled to provide about themselves is already available to law enforcement through other databases and investigative tools. The state has not considered less intrusive ways to obtain the information that registrants provide—e.g., through tax, employment, motor vehicle, and postal records.

236. Upon information and belief, the vast majority of the information that registrants are compelled to provide about themselves is simply added to the registry and is never used by law enforcement for any investigative purpose.

237. The new SORA's compelled disclosure requirements are subject to strict scrutiny under the First Amendment to the U.S. Constitution (incorporated against the states through the Fourteenth Amendment).

238. Under strict scrutiny, the new SORA's compelled speech requirements must be narrowly tailored to a compelling government interest, and be the least restrictive means of achieving that end.

239. Although Michigan has a strong interest in preventing sexual offenses, the new SORA's ineffective or counterproductive registration scheme that compels disclosures from people who pose no appreciable risk is not

narrowly tailored, let alone the least restrictive means, of advancing that interest.

240.   The new SORA's compelled disclosure requirements violate the First Amendment rights of Doe absent an individualized, periodic determination that (1) he is presently dangerous, (2) the compelled disclosure is necessary to alleviate that danger, and (3) the information is not otherwise available to law enforcement.

### COUNT IV: Violation of Plea Agreements (Due Process)

241.   Defendants who plead guilty give up their constitutional right to a trial and enter into a quid pro quo with the government. Retroactive changes to the terms of plea agreements are analyzed under both due process and contractual principles.

242.   Sex offender registration is a severe penalty that is intimately related to the criminal process and imposed as a result of a criminal conviction.

243.   Due process requires fair notice of such consequences. "[W]hen addressing ex post facto-type due process concerns, questions of notice, foreseeability, and fair warning are paramount." *United States v. Barton*, 455 F.3d 649, 654 (6th Cir. 2006).

244.   Defendants charged with sex offenses routinely consider whether they are required to register, how long the registration term is, and whether

registration is public or private, in making decisions about whether to accept a plea agreement.

245.  "[C]onsiderations of fair notice, reasonable reliance, and settled expectations" limit the imposition of more severe conviction-based consequences than those considered at the time of the plea. *I.N.S. v. St. Cyr*, 533 U.S. 289, 321 (2001) (internal quotation marks and citations omitted).

246.  At the time Doe pleaded guilty in 1991, Michigan did not have a sex offender registry. He had no notice that as a result of his plea, he would later retroactively become subject to lifetime registration as a sex offender, subject to all the burdens that the new SORA, ***enacted 30 years later***, imposes.

247.  By retroactively imposing lifetime registration on individuals who pleaded guilty without notice that they would be subject to lifetime registration, the state has violated the Due Process Clause.

### COUNT V: Vagueness (Due Process)

248.  The Due Process Clause of the Fourteenth Amendment prohibits states from enforcing laws that are unconstitutionally vague. As a matter of due process, statutory requirements must be written with sufficient specificity that persons of ordinary intelligence need not guess as to their meaning and will not differ as to their application.

249. For the reasons listed in this Complaint, the new SORA is unconstitutionally vague. The vague provisions cannot be enforced under the Due Process Clause.

## COUNT VI: Compelled Admission of "Understanding" the New SORA (First Amendment)

250. The new SORA provides that registrants be provided a notification of duties. *See* M.C.L. §§ 28.726(1), 28.727(3).

251. It is a crime for registrants not to sign the Explanation of Duties. *See* M.C.L. § 28.727(4) ("The individual shall sign a registration and notice."); M.C.L. § 28.729(3) ("An individual who willfully fails to sign a registration and notice as provided in section 7(4) is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $1,000.00, or both.").

252. The Explanation of Duties that registrants are required to sign states: "I have read the above requirements and/or had them read to me and I understand my registration duties."

253. Registrants who report updates by mail must use the Michigan Sex Offender Registry Mail-in Update Form. The form requires registrant to sign a statement saying: "I have read the 'Explanation of Duties to Register as a Sex Offender' listed on pages two and three of this form and/or had them read to me and I understand my registration duties."

254.   Registrants are required to sign these forms regardless of whether they in fact understand the new SORA's complex registration requirements.

255.   Many of the new SORA's requirements are vague. Many registrants, including Doe, do not understand all of the requirements of the Act.

256.   Requiring registrants to sign the statement on the Explanation of Duties and the Registry Mail-in Update Form attesting to their understanding of the new SORA is compelled speech. Furthermore, Doe never even received these documents.

257.   By making it a crime for registrants not to sign these forms, the state is not only compelling registrants to speak, but is compelling them to make a statement that, in the vast majority of cases, is false.

258.   Defendants do not have a compelling state interest in forcing registrants to sign forms stating that they understand their registration requirements, and forcing registrants to sign such forms is not a narrowly tailored means of furthering any compelling interest that the state may have. Requiring registrants to attest that they understand the new SORA violates the First Amendment of the U.S. Constitution (incorporated against the states through the Fourteenth Amendment).

**Lack of a Legal Remedy**

259.  The plaintiff's harm is ongoing, and cannot be alleviated except by declaratory and injunctive relief.

260.  No other remedy is available at law.

### REQUEST FOR RELIEF

Wherefore, plaintiff asks the Court to grant the following relief:

261.  **Ex Post Facto Claim (Count I)**: Declare, pursuant to 28 U.S.C. §§ 2201 and 2202, that the 2021 SORA amendments violate the Ex Post Facto Clause of the Constitution, and permanently enjoin the defendants from enforcing them against the plaintiff.

262.  **Lack of Individualized Review (Count II)**: Declare, pursuant to 28 U.S.C. §§ 2201 and 2202, that the 2021 SORA amendments, by imposing extensive and in most cases lifetime sex offender registration without any individualized, periodic review, violates the Due Process and Equal Protection Clauses of the United States Constitution; and enjoin Defendants from enforcing the new SORA absent individualized, periodic review for the plaintiff.

263.  **Mandatory Reporting Requirements and Compelled Speech (Count III)**: Declare, pursuant to 28 U.S.C. §§ 2201 and 2202, that the 2021 SORA amendments' compelled disclosure requirements violate the First Amendment rights of the plaintiff and permanently enjoin Defendants from

enforcing the compelled disclosure requirements in M.C.L. §§ 28.724a(1)–(4), 28.725(1)–(3), (7)–(8), (10)–(13), 28.725a(3)–(5), (7)–(8), and 28.727(1)—absent the individualized, periodic determination described above.

264. **Violation of Plea Agreements (Count IV)**: Declare, pursuant to 28 U.S.C. §§ 2201 and 2202, that for individuals who pleaded guilty, retroactively imposing the 2021 SORA amendments for life violates the terms of the plea agreements the state made in violation of the Due Process Clause; and permanently enjoin Defendants from enforcing SORA 2021 against the plaintiff.

265. **Vagueness (Count V)**: Declare, pursuant to 28 U.S.C. §§ 2201 and 2202, that the 2021 SORA amendments are unconstitutionally vague, and permanently enjoin Defendants from enforcing its unconstitutionally vague provisions against the plaintiff.

266. **Compelled Admission of "Understanding" the 2021 SORA Amendments (Count VI)**: Declare, pursuant to 28 U.S.C. §§ 2201 and 2202, that requiring registrants to sign an Explanation of Duties Form and a Michigan Sex Offender Registry Mail-in Update Form stating that they understand their registration duties under the 2021 SORA amendments violates the protection against compelled speech of the First Amendment to

the U.S. Constitution; and permanently enjoin Defendants from requiring the plaintiff to attest that he understands his obligations under the new SORA.

267.    John Doe further requests a preliminary injunction of any Sex Offender Registry requirements as this litigation is pending.

268.    John Doe requests attorney's fees under 28 U.S.C. § 1988 and M.C.L. § 600.2911.

March 2, 2022                                 /s/ Dustyn Coontz
                                             Attorney for John Doe

# Exhibit 1

# MICHIGAN SEX OFFENDER REGISTRATION

1994 PA 295 creates the Sex Offender Registration Act requiring persons convicted of certain sex crimes to register with a local law enforcement agency and requires criminal justice agencies to provide prescribed registration information to the Michigan Department of State Police.

An individual required to be registered under this act who willfully violates this act is guilty of a felony.

Persons required to be registered shall notify, in person, either a local law enforcement agency, sheriff department or state police post within 10 days of any address change.

\* Portions of this registration are confidential.  Disclosure of confidential information is protected by the Federal Privacy Act.

MDOC# __220805__
(DOC Use Only)

---

☐ **REGISTRATION**   LEIN MESSAGE KEY: [ESOR]

FULL NAME OF REGISTRANT ▉▉▉▉▉▉▉▉▉▉▉   COUNTY __44__ ( 2-DIGIT COUNTY CODE)

STREET _____ CITY _____ STATE _____ ZIPCODE _____
POST OFFICE BOX NOT ACCEPTED

DOB ▉▉▉   RACE ▉▉▉ SEX **m** HGT ▉▉ WGT ▉▉

HAIR ▉▉ EYE ▉▉ SSN ▉▉▉ DLN ▉▉▉
OPTIONAL                                    OPTIONAL

BLOOD TYPE _____ DNA PROFILE AVAILABLE _____ ALIASES _____
OPTIONAL              OPTIONAL

---

COMPILED LAW CITATION(S) 1: __750.520C__   2: __750.520D__

DURATION: 25 YEARS __✓__ LIFE _____ DATE REGISTERED __12-21-95__

---

☐ **CHANGE OF ADDRESS ONLY**   LEIN MESSAGE KEY: [SESUP]   *Tha Puholor*

FULL NAME OF REGISTRANT ▉▉▉▉▉▉▉▉▉   COUNTY __25__ ( 2-DIGIT COUNTY CODE)

STREET ▉▉▉ CITY ▉▉ STATE _m_ ZIPCODE ▉▉
POST OFFICE BOX NOT ACCEPTED

---

▉▉▉
SIGNATURE OF OFFENDER

_____ 
SIGNATURE OF
PARENT OR GUARDIAN (JUVENILE OFFENDER)

*Kevin Smith*                          *KEVIN SMITH*   RVM
SIGNATURE OF REGISTERING OFFICIAL       NAME OF REGISTERING OFFICIAL

REGISTERING AGENCY  *MDOC THUMB CORR FACILITY  LAPEER, MI*

DATE __12-21-95__   ORI __MI440025C__

08570167

**PLEASE PROVIDE REGISTRANT WITH YELLOW COPY**
## SEE REVERSE SIDE FOR INSTRUCTIONS

DD-4 (10/95)
**Michigan State Police**
1994 PA 295

# INSTRUCTIONS

## INITIAL REGISTRATION

- The registration form shall be filled out completely by the agency official. (Do NOT allow offender to fill out form).

- Both registering official and offender shall sign and date the form.

- If appropriate, have the parent or guardian of the juvenile offender sign the form.

- Provide the yellow copy of the signed form to the offender.

- Photograph offender for your files (OPTIONAL)

- File original form with your files (OPTIONAL)

- If the registration occurs at a Michigan State Police post send a copy (within 7 days) to the local law enforcement agency in the municipality in which the individual's address is located or the sheriff's department if no local agency exists.

- Call up the screen on LEIN (F SOR). Enter all requested information. Use the remarks section to provide a brief summary of the individual's convictions for listed offenses, including where the offenses occurred and the original charge if the conviction was for a lesser offense.

## CHANGE OF ADDRESS

- Verify the identification of the offender presenting for change of address.

    a. picture identification
    b. check sex registration status in LEIN

- Call up the screen on LEIN (F SOR=SESUP) and enter the required information.

- Complete the bottom half of the DD-4 beginning with CHANGE OF ADDRESS ONLY.

- Provide a copy of the signed form to the offender.

## OFFENSES REQUIRING REGISTRATION

Offenses requiring registration as prescribed by P.A. 295.

| | |
|---|---|
| 750.145A | Children-Accosting for Immoral Purposes |
| 750.145B | Children-Accosting for Immoral Purposes 2nd Offense |
| 750.145C | Child-Sexually Abusive Commercial Activity |
| 750.167(1)(f) | Disorderly Person-Obscene Conduct |
| 750.335A | Indecent Exposure |
| 750.455 | Pandering |
| 750.520B | Criminal Sexual Conduct - 1st degree |
| 750.520C | Criminal Sexual Conduct - 2nd degree |
| 750.520D | Criminal Sexual Conduct - 3rd degree |
| 750.520E | Criminal Sexual Conduct - 4th degree |
| 750.520G | Assault With Intent to Commit CSC |

**NOTE:  THE REGISTRATION IS NOT COMPLETED UNTIL ENTERED INTO LEIN**

Exhibit 2

 Gmail

## HR Communications Regarding 5/26/20

1 message

████████████████████                                    Fri, May 29, 2020 at 1:45 PM
To: Jefferey_R_Hartsaw@homedepot.com, "Lawrence, Amy T" <Amy_T_Lawrence@homedepot.com>

Jeff / Amy,

I'm looking for some clarification.  I've gathered the paperwork together and faxed it to corporate HR yesterday @ (877)959-3107 as requested.  I followed up today with Sharese @ Corporate HR, I gave her the case # 493908 (that was given to me during my conversation with HR on Wednesday) and she could not pull it up.  She stated she was unable to locate any cases that were assigned to me, nor was she able to verify/confirm receipt of the fax that I sent.  Sharese suggested that I reach out to you so that you can obtain that information for me.  She also stated that she did not show that I was on administrative leave.

Can you please reach out to corporate HR to verify the correct case number & if they have received the fax I sent yesterday?  Am I on administrative leave? Are my pay and benefits suspended?

Please let me know what you find out & how I need to proceed.

Sincerely,

████████████

Hi ,

I will follow up with Natalie and have her verify and reach out to you about what she has received.

You are on administrative leave, which is unpaid, while the investigation is ongoing.  As soon as a decision has been made we will have your management team will follow up with you.

**Amy Lawrence**

**District Human Resource Manager**

**The Home Depot | District 244**

Cell: 810-471-8059 | Fax: 877-959-0344

✉: **Amy_T_Lawrence@homedepot.com**



[Quoted text hidden]

---

The information in this Internet Email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this Email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this Email are subject to the terms and conditions expressed in any applicable governing The Home Depot terms of business or client engagement letter. The Home Depot disclaims all responsibility and liability for the accuracy and content of this attachment and for any damages or losses arising from any inaccuracies, errors, viruses, e.g., worms, trojan horses, etc., or other items of a destructive nature, which may be contained in this attachment and shall not be liable for direct, indirect, consequential or special damages in connection with this e-mail message or its attachment.

                                                 Fri, May 29, 2020 at 2:52 PM

To: "Lawrence, Amy T" <AMY_T_LAWRENCE@homedepot.com>
Cc: "Hartsaw, Jeffrey R" <JEFFREY_R_HARTSAW@homedepot.com>

Thank you for the update
[Quoted text hidden]

---

**2 attachments**

**image001.png**
19K

**image001.png**
19K

 Gmail

---

## RE: [EXTERNAL] Re: HOME DEPOT BACKGROUND CHECK [ ref:_00D1UzJ0z._5001UbIxWo:ref ]

11 messages

---

**myTHDHR** <mythdhr@homedepot.com>                                       Wed, Jun 3, 2020 at 9:22 AM
To:

Hello,

Any information/documentation you want to provide you may send it in a reply to this email or fax it in to 1-877-959-3107.

Thank you,
Background Check Program Office

--------------- Original Message ---------------
**From:**
**Sent:** 6/2/2020 6:58 PM
**To:** mythdhr@homedepot.com
**Subject:** [EXTERNAL] Re: HOME DEPOT BACKGROUND CHECK [ ref:_00D1UzJ0z._5001UbIxWo:ref ]

I received updated documentation from MDOC.  Shall i send it via this email feed?

On Fri, May 29, 2020 at 2:10 PM myTHDHR <mythdhr@hr.homedepot.com> wrote:

  Hello,

  Thank you for providing the requested documentation, it has been received.

  Thank you,
  Background Check Program Office

  ref:_00D1UzJ0z._5001UbIxWo:ref

---

The information in this Internet Email is confidential and may be legally privileged. It is intended solely for the addressee. Access to this Email by anyone else is unauthorized. If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful. When addressed to our clients any opinions or advice contained in this Email are subject to the terms and conditions expressed in any applicable governing The Home Depot terms of business or client engagement letter. The Home Depot disclaims all responsibility and liability for the accuracy and content of this attachment and for any damages or losses arising from any inaccuracies, errors, viruses, e.g., worms, trojan horses, etc., or other items of a destructive nature, which may be contained in this attachment and shall not be liable for direct, indirect, consequential or special damages in connection with this e-mail message or its attachment.

---

                                                                          Wed, Jun 3, 2020 at 1:12 PM
To: myTHDHR <mythdhr@homedepot.com>

Do you have a case # by chance?  I was told on my last call to Sharese @ corporate HR that she didn't see any open cases.  I would like a case # so that i can properly mark all correspondence,

Sincerely,

[Quoted text hidden]

---

**myTHDHR** <mythdhr@homedepot.com>                                       Wed, Jun 3, 2020 at 1:22 PM
To:

The case number is 493908.

Thank you.
[Quoted text hidden]

---

████████████████████████                                  Wed, Jun 3, 2020 at 1:25 PM
To: myTHDHR <mythdhr@homedepot.com>

Thank you!
[Quoted text hidden]

---

████████████████████████                                  Wed, Jun 3, 2020 at 1:48 PM
To: myTHDHR <mythdhr@homedepot.com>

To Whom It May Concern,

I am attaching the 2 documents (4 pages total) I received from MDOC (Michigan Department of Corrections).  The first is a verification of incarceration, it shows that I was sentenced for between 3-15 years.  I was paroled in early 1997 and released from probation in 1999.  The second form attached shows my request for my records from the period I spent in jail, according to their response all records have been destroyed and are not available.   The form I previously sent shows that I was to be put on the registry on 12/21/1995 for 25 years.  It will be 25 years this December.

Sincerely,

████
[Quoted text hidden]

**2 attachments**

📄 **220805** ████ **Proof of Incarceration.pdf**
99K

📄 **20-3213 Response Signed.pdf**
294K

---

████████████████████████                                  Thu, Jun 4, 2020 at 4:42 PM
To: myTHDHR <mythdhr@homedepot.com>

Hi Natalie,

Per our recent phone conversation you inquired on what I had put on my application in regards to any prior convictions.  From my recollection I had stated that there was a prior conviction.  I was surprised that you mentioned that it was marked NO.  Can you please forward me a copy of my application.

Sincerely,

████████

[Quoted text hidden]

---

**myTHDHR** <mythdhr@homedepot.com>                       Fri, Jun 5, 2020 at 12:02 PM
To: ████████████████████████

It is attached.
[Quoted text hidden]

📄 **Application** ████████ **2741.pdf**
126K

---

████████████████████████                                  Fri, Jun 12, 2020 at 9:15 AM

To: myTHDHR <mythdhr@homedepot.com>

To Whom It May Concern,

Case # 493908

I last spoke with Natalie on 6/4/20, she stated that they have all the information they need and that I should hear something back by 6/5/20 or 6/8/20.  I have left 3 messages for Natalie (6/10/20, 6/11/20, 6/12/20) I have not received any response as to the status of my administrative leave as of yet.  If someone could call me directly as soon as possible at  (248) 214-0375 with an update I would greatly appreciate it.

Sincerely,

████████

[Quoted text hidden]

---

**myTHDHR** <mythdhr@homedepot.com>                                    Sun, Jun 14, 2020 at 6:26 PM
To: ████████████████████████

Hello,

Apologies but no messages were received. However, as of now no decision has been made on the investigation as of yet. We are hoping for an update this coming week. You will be notified by your management team once a decision has been made.
[Quoted text hidden]

---

████████████████                                                       Sun, Jun 14, 2020 at 8:19 PM
To: myTHDHR <mythdhr@homedepot.com>

Thank you for the update.   The number I've been calling for Natalie is 470-785-1661 .  Is this still the best number to call or is email the best way to contact you if I have further questions?
[Quoted text hidden]

---

**myTHDHR** <mythdhr@homedepot.com>                                    Mon, Jun 15, 2020 at 10:08 AM
To: ████████████████████████

Hello,

That is the correct number. We have been having issues with receiving messages, apologies for that. Email is the best and fastest way to get a response.
[Quoted text hidden]

# Exhibit 3

## Fwd: Adverse Action Notice- Advanced Disposal Services: ███████████

From: ████████████████████████

To: ████████████████

Date: Wednesday, February 9, 2022, 06:05 PM EST

---------- Forwarded message ---------
From: **Sara Hennings** <Sara.Hennings@advanceddisposal.com>
Date: Wed, Feb 26, 2020, 10:27 AM
Subject: Adverse Action Notice- Advanced Disposal Services: ███████████
To: ███████████████████████████████████

Dear ████:

Per our phone conversation on February 26, 2020, we regret to inform you that **Advanced Disposal Services** (the "Company") **is unable to offer you employment.**

This decision was based in whole or in part on information contained in a report, including the following specific items contained in the report from **Concorde, Inc., 1835 Market Street, Suite 1200, Philadelphia, PA 19103; Tel. # 1.800.662.1676; www.Concorde2000.com**: Registered Sex Offender in the State of Michigan.  A copy of this report was previously given to you.  The agency did not make this employment decision and is unable to supply you with specific reasons why the decision was made.  Under Section 612 of the Fair Credit Reporting Act, you have the right to obtain a free copy of the report if you submit a written request to the agency identified above no later than 60 days after you receive this notice.  Under Section 611 of that Act, and state law you also have the right to dispute the accuracy or completeness of any information in the report by contacting the consumer reporting agency above.

If you wish to dispute the accuracy of the information in the report directly with the consumer reporting agency (i.e., the source of the information), you should contact the agency identified above directly.

**Sara Hennings**

**T**:704-650-4084 |  **E:**  sara.hennings@advanceddisposal.com

 **Clean & Green: Please consider the environment before printing this e-mail**

**From:** Sara Hennings
**Sent:** Tuesday, February 25, 2020 12:15 PM
**To:** ██████████████████████
**Subject:** Pre-Adverse Action Notice- Advanced Disposal Services: ███████████

Dear ████:

You recently authorized **Advanced Disposal Services** (the "Company") to obtain consumer reports and/or investigative consumer reports about you from a consumer reporting agency.  The Company is considering taking action in whole or in part based on information in such report(s), including the following specific items identified in the report:

Registered Sex Offender in the state of Michigan

Enclosed please find (1) a copy of the report we obtained from **Concorde, Inc., 1835 Market Street, Suite 1200, Philadelphia, PA 19103; Tel. # 1.800.662.1676; www.Concorde2000.com**; (2) A Summary of Your Rights Under the Fair Credit Reporting Act.

If you wish to dispute the accuracy of the information in the report directly with the consumer reporting agency (i.e., the source of the information contained in the report), you should contact the agency identified above directly.

We will evaluate the information in your report on an individualized case-by-case basis in accordance with applicable law.  If you believe that there is additional information that may help us better evaluate your fitness for this position, including evidence of rehabilitation or mitigating circumstances, please contact us immediately by responding to this email.


[If we do not hear from you within [5] days, we will make our hiring determination based on the information currently available to us.


In the event that an adverse employment action is taken based upon information contained in the pre-employment background screen, the Company will provide you notice of such action.



Sincerely,


Sara Hennings


Enclosures:
A Summary of Your Rights Under the FCRA
Consumer Report

**Sara Hennings** **| Director, People Services** East Region

**PO Box 77368 | Charlotte, NC  28271**
**T:**704-900-3411**| C:** 704-650-4084 **| F**: 704-900-3571 **| E:**  sara.hennings@advanceddisposal.com

**Connect with us:**    **AdvancedDisposal.com**    **Facebook**    **YouTube**

 **Clean & Green: Please consider the environment before printing this e-mail**

 image001.jpg
2.9kB

 image001.jpg
2.9kB

Exhibit 4

Floor & Decor Outlets of America, Inc
2233 Lake Park Dr SE
Smyrna, GA 30080-8813



02/28/2020

, MI ████

Dear ████████:

We regret to inform you that Floor and Decor Outlets of America, Inc. (the "Company") is unable to offer you employment.

This decision was based in whole or in part on information contained in a report obtained from:

First Advantage Background Services Corp("First Advantage") at:
First Advantage, Consumer Disclosure Center
PO Box 105292
Atlanta, GA 30348
1-800-845-6004
www.fadv.com

A copy of this report was previously given to you. The agency did not make this employment decision and is unable to supply you with specific reasons why the decision was made. Under Section 612 of the Fair Credit Reporting Act, you have the right to obtain a free copy of the report if you submit a written request to the agency identified above no later than 60 days after you receive this notice. You also have the right to dispute the accuracy or completeness of any information in the report by contacting the consumer reporting agency above.

If you wish to dispute the accuracy of the information in the report directly with the consumer reporting agency (i.e., the source of the information), you should contact the agency identified above directly.

**Massachusetts applicants or employees only:** You have the right to obtain a free copy of your credit report within sixty days from the consumer credit reporting agency which has been identified on this notice. The consumer credit reporting agency must provide someone to help you interpret the information on your credit report. Each calendar year you are entitled to receive, upon request, one free consumer report. You have the right to dispute inaccurate information by contacting the consumer credit reporting agency directly. If you have notified a consumer credit reporting agency in writing that you dispute the accuracy of information in your file, the agency must then, within thirty business days, reinvestigate and modify or remove inaccurate information. The consumer credit reporting agency may not charge a fee for this service. If reinvestigation does not resolve the dispute to your satisfaction, you may send a letter to the consumer credit reporting agency, to be kept in your file, explaining why you think the record is inaccurate. The consumer credit reporting agency must include your statement about the disputed information in a report it issues about you.

**Philadelphia, Pennsylvania applicants or employees only:** You have 10 business days to provide information concerning the accuracy of the criminal history information in your consumer report or additional information you wish the Company to consider. The Company will consider all additional information provided by you.

420117280003220

**Los Angeles, California applicants or employees only:** A copy of the written assessment required by the Los Angeles Fair Chance Initiative for Hiring Ordinance was provided with your pre-adverse action letter. If we received additional information from you in response to your pre-adverse action letter, you will receive a copy of the written reassessment required by the Los Angeles Fair Chance Initiative for Hiring Ordinance

**California applicants or employees only:** If the adverse decision was based on criminal history information, you have a right to file a complaint with the California Department of Fair Employment and Housing.

Sincerely,

Human Resources
Floor and Decor Outlets of America, Inc.



## CID - 160950094

FLOOR AND DECOR OUTLETS OF AME
2233 LAKE PARK DR SE
..
SMYRNA, GA 30080-8813

**Caution to Customer:** Under the terms of the service agreement, this report is delivered with the understanding that the recipient client will hold the same in strict confidence and not disclose it to third parties and furthermore is to be used only for the purpose indicated in the Client's agreement for service, i.e. employment/volunteer/or resident/tenant screening purposes. This report and information provided therein is strictly confidential as it contains personal and sensitive information of the consumer/applicant/candidate/employee and must be utilized solely for the business purposes consistent with the declared purpose in the service agreement and is not to be used by the client or third parties for any other purposes. Client agrees to abide and comply with all applicable laws in connection with this report including data privacy, data protection laws and other similar applicable regulations.

First Advantage is not the source of the data provided in this report in that the data is collected by First Advantage from third party data sources such as public records held in governmental databases or courthouses, schools, colleges, universities, company officials, or third party proprietary databases etc. Accordingly First Advantage does not warrant the accuracy of the information provided by those third parties and expressly disclaims any and all liability for any and all claimed losses, damages, expenses including attorney fees and costs incurred as a result of reliance upon the content of this report.

For US-based Clients or Clients obtaining reports on US residents: Client certifies that it has complied with the Fair Credit Reporting Act (FCRA) and that it has provided a clear disclosure in compliance with the FCRA to the consumer/applicant/candidate/employee and obtained consent and authorization from the consumer/applicant/candidate employee in order to receive this report. If the client intends to take adverse action based in whole or in part on the contents of this report, the client must provide the consumer with a copy of the report, a summary of consumers rights as prescribed by FCRA section 1681g(c)(3) and a copy of any applicable state law rights before taking any action, wait a reasonable period of time for the consumer to dispute any inaccurate information and then can take adverse action. First Advantage has provided your company with copies of the CFPB Summary of Rights for this purpose.

For California based Clients or Clients obtaining reports on California residents: In California an investigative consumer reporting agency shall provide a consumer seeking to obtain a copy of a report or making a request to review a file, a written notice in simple, plain English and Spanish setting forth the terms and conditions of his or her right to receive all disclosures.

| | |
|---|---|
| If you are a First Advantage Consumer | Please contact the First Advantage Consumer Center at:<br>**1-800-845-6004** Toll Free (within the U.S.)<br>**+1 971-280-8128** Toll Number (outside the U.S.)<br>Or visit http://fadv.com/our-company/contact-support.aspx for local contact details |

4201172800052205

First Advantage Customers: Please contact the CHICAGO EMPLOYMENT SERVICE CENTER at (800)888-5773 (outside North America +1 971-280-8128)

Case 2:22-cv-10510-GCS-APP ECF No. 1, PageID.94 Filed 03/10/22 Page 94 of 120

## General Consumer Information

**Consumer's Name** ▇▇▇▇▇▇▇

**Organization** STORE MANAGEMENT (ROBERT THOMAS)

**Client Name** FLOOR AND DECOR OUTLETS OF AME

**Requestor's email** ROTHOMAS@FLOORANDDECOR.COM

**The following consumer information was used in the production of this report:**
Last Name, First Name, Middle Name, SSN, Date of Birth, Address

**SSN** ▇▇▇▇▇▇

**Address** ▇▇▇▇▇▇▇▇▇

**Date of Birth** ▇▇▇▇▇

**Consumer Contact** ▇▇▇▇▇▇

**Consumer Alternate Contact**

## Other Names Provided

| Last Name, Suffix | First Name | Middle Name |
|---|---|---|
| ▇ | ▇ | None Provided |

**Information Regarding this Order:**

**Position Applied For** PRO SERVICES MANAGER

**Date Ordered** 12/Feb/2020 09:45:59 PM

**Background Check Completion Date** 14/Feb/2020 05:20:29 AM

**Report Last Updated on** 14/Feb/2020 05:20:29 AM

**Date Report Printed** 28/Feb/2020 05:20:02 AM

## Additional Information

| Label | Value |
|---|---|
| Job Requisition ID | R013923 |
| Primary Job Location | 230 Novi - MI |
| Additional Job Location | |
| Workday Id | A063219 |
| Job Profile | STR010R - Pro Services Manager |
| Cost Center | 00230 230 Novi |

All timestamps represent US Eastern Time

## First Advantage Background Report Summary

**Consumer's Name** ███████████          **Date Ordered:** 12/Feb/2020 09:45:59 PM

**Background Check** 14/Feb/2020 05:20:29 AM
**Completion Date:**

**Score Result** 02/14/2020 - BASED ON YOUR CRITERIA, THE OVERALL CASE SCORE IS INELIGIBLE

### Package Name: CRIMINAL AND DRUG

| Package Searches Ordered | Status | Review | Score |
|---|---|---|---|
| Social Security Verification | Complete | No | |
| Social Security Verification | Complete | No | Pass |
| First Advantage National Criminal File | Complete | No | |
| First Advantage National Criminal File SWARTZ CREEK, GENESEE, MI | Complete | No | Eligible |
| Felony Including Misdemeanor | Complete | No | |
| Felony Including Misdemeanor DAVISBURG, OAKLAND, MI | Complete | No | Eligible |
| Felony Including Misdemeanor SWARTZ CREEK, GENESEE, MI | Complete | No | Eligible |
| National Sex Offender Registry | Complete | Yes* | |
| National Sex Offender Registry Search - Department Of Justice Web Site | Complete | Yes* | Ineligible |

**Additional Searches Ordered**
NONE

* Further review is required by the client to determine the consumer's eligibility based on background check results. Please refer to the corresponding detailed component report section for additional information.

** Further review is required by the client to determine the consumer's eligibility based on background check results. Please refer to the corresponding detailed component report section for additional information.

*** This product has been blocked from delivery due to compliance related restrictions.

**Note**

The Social Security Number Validation is a process where the SSN is
confirmed as being issued by the Social Security Administration. The Social Security Number
Validation also confirms that the SSN does not belong to a deceased individual.

**Valid SSN?** Yes                           **State Issued** FLORIDA

**Date Issued** BETWEEN 1979-1979    **Reported Deceased?** No

**Disclaimer**

The results of the Social Security Number Validation
do not provide a verification that the Social Security Number belongs to the Consumer of this report.

## Social Security Verification

**Status:** **Complete**
**Score:** **Pass**

### Date Completed: 12/Feb/2020

The Social Security Number Verification (SSNV) matches the given SSN against    consumer credit files contained in the databases of nationwide credit reporting agencies. The credit bureaus' consumer credit files contain information provided by companies with    which the consumer has had financial dealings and/or public record information collected   by the bureaus from the courts.   The SSNV does not verify that the Social Security Administration issued a specific SSN to a consumer.

**Social Security Verification results and Remarks returned from this search are for informational purposes and should not be relied upon as a basis for determining the eligibility of a consumer for credit, insurance, employment or any other product or service, without additional review with and clarification from the consumer.**

SOCIAL SECURITY VERIFICATION NAME AND ADDRESS INFORMATION OBTAINED FROM: EXPERIAN

### Customer Provided Information

| | | |
|---|---|---|
| **SSN** █████ | **DOB** █████ | |

**SSN State Issued** | **SSN Year Issued** 1980

| | |
|---|---|
| **Name Type** Report Subject | **Name** █████ |
| **Name Type** Former Name | **Name** █████ |

| **Addr Type** **Address** ████████ | **First Date** 02/01/2013 **Last** 11/01/2013 |
|---|---|
| **Addr Type** **Address** | **First Date** 05/01/1997 **Last** 01/01/2002 |
| **Addr Type** **Address** | **First Date** 01/01/1992 **Last** 04/01/2002 |
| **Addr Type** **Address** | **First Date** 12/01/2002 **Last** 12/01/2002 |
| **Addr Type** **Address** | **First Date** 02/01/2009 **Last** 02/01/2009 |
| **Addr Type** **Address** | **First Date** 11/01/2002 **Last** 04/01/2009 |
| **Addr Type** **Address** | **First Date** 04/01/2008 **Last** 12/01/2012 |
| **Addr Type** **Address** | **First Date** 03/01/2017 **Last** 04/01/2017 |
| **Addr Type** **Address** | **First Date** 09/01/2017 **Last** 05/01/2018 |
| **Addr Type** **Address** | **First Date** 03/01/2016 **Last** 11/01/2019 |

420117280052205

**Employment Type** ES

**Employer Name** HOME DEPOT

**Remarks and/or Social Security Alerts**

02/12/20: SUBJECT NAME RETURNED MATCHED WITH A DEVELOPED NAME.

02/12/20: NO ALERTS RETURNED FROM SEARCH.

| Order Process History | |
|---|---|
| **Date** | **Description** |
| 12/Feb/2020 09:46:00 PM | Search In Progress. |
| 12/Feb/2020 09:46:04 PM | Record Judged. |

Back to top

### First Advantage National Criminal File SWARTZ CREEK, GENESEE, MI
**Date Completed: 14/Feb/2020**

**Status: Complete**
**Score: Eligible**

| | |
|---|---|
| **Record Source** | DATABASE SEARCH |
| **Search Results** | No Record Found |
| **Search Type** | First Advantage National Criminal File Search |
| **Address Covered** | |
| **Address City Covered** | |
| **Address County Covered** | |
| **Address State Covered** | |
| **Address Zip** | |
| **Given Name Searched** | |

| Source Status History | |
|---|---|
| **Status Date** | **Description** |
| 13/Feb/2020 05:09:56 AM | search in progress |

| Order Process History | |
|---|---|
| **Date** | **Description** |
| 12/Feb/2020 09:46:00 PM | Record Ordered. |
| 12/Feb/2020 09:49:34 PM | Search In Progress. |
| 13/Feb/2020 12:44:33 AM | Research Required -- First Advantage Research In Progress -- Delay Possible. |
| 14/Feb/2020 01:45:21 AM | Record Judged. |

Back to top

### Felony Including Misdemeanor DAVISBURG, OAKLAND, MI
**Date Completed: 13/Feb/2020**

**Status: Complete**
**Score: Eligible**

| | |
|---|---|
| **Record Source** | OAKLAND 6TH CIRCUIT COURT |
| **Search Results** | No Record Found |
| **Search Type** | FELONY INDEX SEARCH INCLUDE MISDEMEANORS |
| **Date of Search** | 13/Feb/2020 |
| **Search Period** | 01/29/2013 - 01/29/2020 |
| **Address Covered** | |

| Address City Covered | |
| Address County Covered | |
| Address State Covered | |
| Location | |
| Given Name Searched | |
| Developed Name Searched | |

### Source Status History

| Status Date | Description |
| --- | --- |
| 12/Feb/2020 09:46:27 PM | Search in progress. Estimated completion by 02/13/2020 |

**Remark**

02/12/20: THIS SEARCH ALSO COVERS: ⬛ , OAKLAND COUNTY, MI;

### Order Process History

| Date | Description |
| --- | --- |
| 12/Feb/2020 09:46:00 PM | Search In Progress. |
| 12/Feb/2020 09:46:03 PM | Search In Progress. |
| 13/Feb/2020 09:01:19 AM | Record Judged. |

Back to top

---

**Felony Including Misdemeanor SWARTZ CREEK, GENESEE, MI**  **Status: Complete**  **Score: Eligible**

**Date Completed: 13/Feb/2020**

| Record Source | GENESEE 7TH CIRCUIT COURT |
| --- | --- |
| Search Results | No Record Found |
| Search Type | FELONY INDEX SEARCH INCLUDE MISDEMEANORS |
| Date of Search | 13/Feb/2020 |
| Search Period | 01/29/2013 - 01/29/2020 |
| Address Covered | |
| Address City Covered | |
| Address County Covered | |
| Address State Covered | |
| Address Zip | |
| Location | |
| Given Name Searched | |
| Developed Name Searched | |

### Source Status History

| Status Date | Description |
| --- | --- |
| 13/Feb/2020 09:28:22 AM | Additional handling required. Estimated completion by 02/19/2020 |
| 12/Feb/2020 09:46:27 PM | Search in progress. Estimated completion by 02/13/2020 |

**Remark**

02/12/20: THIS SEARCH ALSO COVERS: ⬛ , GENESEE COUNTY, MI;

### Order Process History

| Date | Description |
| --- | --- |
| 12/Feb/2020 09:46:00 PM | Search In Progress. |
| 12/Feb/2020 09:46:00 PM | Search In Progress. |

420117280052206

13/Feb/2020 12:48:17 PM   Search In Progress.
13/Feb/2020 02:11:47 PM   Record Judged.

Case 2:22-cv-10516-NGE-APP   ECF No. 1, PageID.100   Filed 03/10/22   Page 100 of 120

Back to top

| National Sex Offender Registry Search - Department Of Justice Web Site | | Status:   Complete |
|---|---|---|
| | | Score:   Ineligible |

**Date Completed: 13/Feb/2020**

| Record Source | NATIONAL SEX OFFENDER REGISTRY |
|---|---|
| **Search Results** | Record Found |
| **Search Type** | NATIONAL SEX OFFENDER REGISTRY SEARCH-DEPT OF JUSTICE |
| **Date of Search** | 13/Feb/2020 |
| **Search Period** | 01/29/2013 - 01/29/2020 |
| **Given Name Searched** | ■■■■■■■ |
| **Developed Name Searched** | ■■■■■■■■■■■■■■■■■■ |

*Full matched by the following identifiers: Last Name, First Name, DOB*

| Name on File | ■■■■■■■■■■ |
|---|---|
| **Address on File** | |
| **DoB on File** | |
| **Sentence** | SOURCE OF RECORD: MICHIGAN SEX OFFENDER REGISTRY |
| | SENTENCE: REGISTERED SEX OFFENDER |

**Source Status History**

| Status Date | Description |
|---|---|
| 12/Feb/2020 09:46:27 PM | Search in progress. Estimated completion by 02/13/2020 |

**Order Process History**

| Date | Description |
|---|---|
| 12/Feb/2020 09:46:00 PM | Search In Progress. |
| 12/Feb/2020 09:46:01 PM | Search In Progress. |
| 13/Feb/2020 04:00:51 AM | Search In Progress. |
| 13/Feb/2020 07:30:06 AM | Record Judged. |

*Para informacion en espanol, visite www.consumerfinance.gov/learnmore o escribe a la Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, D.C. 20552.*

### A Summary Of Your Rights Under the Fair Credit Reporting Act

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. **For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.**

- **You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment - or to take another adverse action against you - must tell you, and must give you the name, address, and phone number of the agency that provided the information.

- **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:
  - a person has taken adverse action against you because of information in your credit report;
  - you are the victim of identity theft and place a fraud alert in your file;
  - your file contains inaccurate information as a result of fraud;
  - you are on public assistance;
  - you are unemployed but expect to apply for employment within 60 days.

In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore for additional information.

- **You have the right to ask for a credit score.** Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

- **You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.

- **Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

- **Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

- **Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need -- usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.

- **You must give your consent for reports to be provided to employers.** A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore

- **You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.** Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1-888-5-OPTOUT (1-888-567-8688).

- The following FCRA right applies with respect to nationwide consumer reporting agencies:

**CONSUMERS HAVE THE RIGHT TO OBTAIN A SECURITY FREEZE**

**You have a right to place a "security freeze" on your credit report, which will prohibit a consumer reporting agency from releasing information in your credit report without your express authorization.** The security freeze is designed to prevent credit, loans, and services from being approved in your name without your consent. However, you should be aware that using a security freeze to take control over who gets access to the personal and financial information in your credit report may delay, interfere with, or prohibit the timely approval of any subsequent request or application you make regarding a new loan, credit, mortgage, or any other account involving the extension of credit.

As an alternative to a security freeze, you have the right to place an initial or extended fraud alert on your credit file at no cost. An initial fraud alert is a 1-year alert that is placed on a consumer's credit file. Upon seeing a fraud alert display on a consumer's credit file, a business is required to take steps to verify the consumer's identity before extending new credit. If you are a victim of identity theft, you are entitled to an extended fraud alert, which is a fraud alert lasting 7 years.

A security freeze does not apply to a person or entity, or its affiliates, or collection agencies acting on behalf of the person or entity, with which you have an existing account that requests information in your credit report for the purposes of reviewing or collecting the account. Reviewing the account includes activities related to account maintenance, monitoring, credit line increases, and account upgrades and enhancements.

- **You may seek damages from violators.** If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

- **Identity theft victims and active duty military personnel have additional rights.** For more information, visit www.consumerfinance.gov/learnmore.

**States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. For information about your federal rights, contact:**

| TYPE OF BUSINESS: | CONTACT |
|---|---|
| 1.a. Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates.<br><br>b. Such affiliates that are not banks, savings associations, or credit unions also should list, in addition to the CFPB: | a. Consumer Financial Protection Bureau<br>1700 G Street NW<br>Washington, DC 20552<br><br>b. Federal Trade Commission: Consumer Response Center - FCRA<br>Washington, DC 20580<br>(877) 382-4357 |
| 2. To the extent not included in item 1 above:<br><br>a. National banks, federal savings associations, and federal branches and federal agencies of foreign banks<br><br>b. State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies, and insured state branches of foreign banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal | a. Office of the Comptroller of the Currency Customer Assistance Group<br>1301 McKinney Street, Suite 3450<br>Houston, TX 77010-9050<br><br>b. Federal Reserve Consumer Help Center<br>P.O. Box 1200<br>Minneapolis, MN 55480<br><br>c. FDIC Consumer Response Center<br>1100 Walnut Street, Box #11<br>Kansas City, MO 64106 |

| | |
|---|---|
| Reserve Act<br><br>c. Nonmember Insured Banks, Insured State Branches of Foreign Banks, and insured state savings associations<br><br>d. Federal Credit Unions | Office of Consumer Protection (OCP)<br>Division of Consumer Compliance and Outreach (DCCO)<br>1775 Duke Street<br>Alexandria, VA 22314<br><br>a. National Credit Union Administration |
| 3. Air carriers | Asst. General Counsel for Aviation Enforcement & Proceedings<br>Aviation Consumer Protection Division<br>Department of Transportation<br>1200 New Jersey Avenue, S.E.<br>Washington, DC 20590 |
| 4. Creditors Subject to Surface Transportation Board | Office of Proceedings, Surface Transportation Board<br>Department of Transportation<br>395 E Street SW<br>Washington, DC 20423 |
| 5. Creditors Subject to Packers and Stockyards Act | Nearest Packers and Stockyards Administration area supervisor |
| 6. Small Business Investment Companies | Associate Deputy Administrator for Capital Access<br>United States Small Business Administration<br>409 Third Street, SW, 8th Floor<br>Washington, DC 20549 |
| 7. Brokers and Dealers | Securities and Exchange Commission<br>100 F Street NE<br>Washington, DC 20549 |
| 8. Federal Land Banks, Federal Land Bank Associations, Federal Intermediate Credit Banks, and Production Credit Associations | Farm Credit Administration<br>1501 Farm Credit Drive<br>McLean, VA 22102-5090 |
| 9. Retailers, Finance Companies, and All Other Creditors Not Listed Above | FTC Regional Office for region in which the creditor operates or<br>Federal Trade Commission: Consumer Response Center - FCRA<br>Washington, DC 20580<br>(877) 382-4357 |

Exhibit 5



6/3/2021



Dear ▮,

**Congratulations!** We are excited to offer you the opportunity to join the Aramark team.  Here are the employment offer details:

**Position, Pay and Benefits**

**Position:**  Your position will be that of Account Executive, Band 7, reporting to Timothy Wisecup.

**Start Date:**   Your anticipated start date will be 6/28/2021

**Department/Work Location:  Wixom, MI (MC 574)**

**Compensation:** Your base salary will be $48,000.00 USD. You will be paid bi-weekly and your position is exempt, which means that you are not eligible to receive overtime pay.  Your hours may fluctuate from week to week and the salary you receive for each week is intended to compensate you for all hours worked that week. This will be reviewed at the end of Fiscal Year 2021 and you may be eligible for a salary increase based upon the results of your performance evaluation. Any increase awarded will be effective January 2022 and prorated accordingly.

**Commission:** You will be eligible for commissions in accordance with the applicable Commission Plan (enclosed).

**Car Allowance (CAL):** You will be eligible to participate in the Aramark Car Allowance program in accordance with the program guidelines and policy. Currently the monthly allowance for this position is $500.00. See enclosed document for additional information regarding the CAL program.

**Vacation:** You will earn 40 hours of vacation after completing six (6) months of service and earn an additional 40 hours upon your 1st year anniversary. After one year of service, you will accrue vacation based on the following schedule:

2nd year - 4th year anniversary:                    2 weeks per year (3.08 hours per pay period)
Start of 5th year - 14th year anniversary:      3 weeks per year (4.62 hours per pay period)
Start of 15th year:                                              4 weeks per year (6.15 hours per pay period)

You are eligible to begin taking earned vacation after six months of employment.

**Benefits:** On your first day of employment you will be eligible to participate in Aramark's Salaried Benefits Program, subject to the terms and conditions of such benefits and benefit plans, and subject to any legal requirements or limitations.  These benefits currently include Medical, Dental,

Vision, Life Insurance, Disability Income Protection, and Retirement benefits. See the attached Benefits Summary for more information.

**Pre-Employment Paperwork and Other Requirements**

**Background Check/Drug Test:** Aramark conducts pre-employment background checks for all new hires. The background check may include, but is not limited to, one or more of the following: criminal history check, sexual offender registry check, motor vehicle report investigation, employment history verification and/or reference check. In addition, a drug test will be required for this position. This offer of employment is contingent upon satisfactory background check results and drug test results.

You will receive communication via email with instructions on how to complete your drug test. As a reminder, all drug screens must be completed within 24 hours of receipt of instructions.

**Form I-9 Compliance:** In order for Aramark to comply with the Immigration Reform and Control Act, you must provide documentation confirming your identity and eligibility to work in the United States within three (3) business days of your first day of work with Aramark. A copy of the Form I-9 Lists of Acceptable Documents is enclosed with this letter. Please note that because Aramark participates in E-Verify, we can accept only those List B documents that contain a photograph.

**Additional Documents to Complete:** Enclosed with this letter you will find additional documents to complete and return. These include two voluntary self-identification forms, Part I of the New Hire/Rehire Form. Additional documents may also be included.

**Other Information**

**Proprietary Information:** During the course of your employment with Aramark, you will receive information and documents from Aramark that contain confidential or proprietary trade information concerning Aramark's business and business relationships ("Proprietary Information"). By accepting our offer of employment, you agree that at no time while employed by Aramark, or after the employment has ended for any reason, will you use any Proprietary Information for any purpose not related to your employment duties at Aramark, or disclose any Proprietary Information to any person, firm or entity not associated with Aramark. At the end of your employment with Aramark, you will return to Aramark all such Proprietary Information, including, but not limited to, all manuals, client and supplier lists, and training and policy materials, as well as all Aramark property.

**Employment At Will:** Your employment with Aramark is at-will. This means that either you or Aramark can terminate your employment relationship at any time for any reason with or without cause and with or without notice. Because your employment with Aramark will be that of an "at will" employee, neither this offer of employment nor any other Aramark literature or document given to you shall alter, or shall be deemed or interpreted to alter, the employment relationship between you and Aramark. At-will employment also means that Aramark may change the terms of employment, such as promotion, demotion, discipline, transfer, compensation, benefits, duties, and location of work, at any time, with or without notice. This letter sets forth the entire understanding of the parties with respect to all aspects of the offer of employment. Any and all previous agreements or understandings between or among the parties regarding the subject matter hereof, whether written or oral, are superseded by this letter.

**Offer Contingency:** This offer of employment with Aramark is contingent upon the following:

- Your ability to provide timely and satisfactory documentary proof of your identity and eligibility

to work in the United States as described above.
- Satisfactory background check, drug test results, and motor vehicle report investigation.
- Your acceptance of the enclosed written employment agreement.
- Your return of this letter, after being signed by you without modification, no later than 3 business days after 6/3/2021, after which time this offer will expire.

**Entire Agreement:** This letter sets forth the entire understanding between you and Aramark with respect to all aspects of the offer of employment.  Any and all previous agreements or understandings between or among you and Aramark regarding topics addressed in this letter, whether written or verbal, are superseded by this letter.  Any modifications to this letter must be in writing and signed by both you and Aramark.

Again, congratulations!  We are excited to have you join the Aramark team. If you have any questions, feel free to contact me at 215-238-3228.

Sincerely,

Jodi Laputka

Talent Acquisition Manager

Aramark Uniform Services

## PROPRIETARY INFORMATION AND POST-EMPLOYMENT RESTRICTIONS AGREEMENT

In consideration of: (a) the decision of Aramark, its parent corporation and affiliated entities (collectively referred to as the "Company") to provide me with access to Proprietary Information to further my opportunities for success while providing service on behalf of the Company; (b) the Company's offer of employment in the position set forth in the offer letter accompanying this Agreement; and (c) my eligibility or continued eligibility to participate in the Aramark annual incentive bonus plan or incentive commission plan, whichever is applicable, subject to the terms of the applicable plan (each of which independently is in consideration of my agreements set forth below), I hereby enter into this Proprietary Information and Post-Employment Restrictions Agreement (the "**Agreement**") and agree as follows:

**1. Nondisclosure.**

**1.1 Recognition of Company's Rights; Nondisclosure.** I understand and acknowledge that my employment by the Company creates a relationship of confidence and trust with respect to the Company's Proprietary Information (defined below) and that the Company has a protectable interest therein.

**1.2 Proprietary Information.** The term "**Proprietary Information**" shall mean any and all confidential and/or proprietary knowledge, data or information of the Company, its affiliates, alliance members, parents and subsidiaries, developers, partners, customers and prospective

customers, whether having existed, now existing, or to be developed during my employment. By way of illustration but not limitation, "**Proprietary Information**" includes (a) trade secrets, inventions, mask works, ideas, processes, formulas, source and object codes, data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques and any other proprietary technology (hereinafter collectively referred to as "**Inventions**"); (b) information regarding research, development, new products, marketing and selling, business plans, budgets and unpublished financial statements, licenses, prices and costs, margins, discounts, credit terms, pricing and billing policies, quoting procedures, methods of obtaining business, forecasts, future plans and potential strategies, financial projections and business strategies, operational plans, financing and capital-raising plans, activities and agreements, internal services and operational manuals, methods of conducting business, suppliers and supplier information, and purchasing; (c) information regarding customers and potential customers of the Company ("**Customers**"), including customer lists, names, representatives, their needs or desires with respect to the types of products or services offered by the Company, proposals, bids, contracts and their contents and parties, the type and quantity of products and services provided or sought to be provided to customers and potential customers of the Company and other non-public information relating to customers and potential customers; (d) information regarding any of the Company's business partners, alliance members and their services, including names; representatives, proposals, bids, contracts and their contents and parties, the type and quantity of products and services received by the Company, and other non-public information relating to business partners and alliance members; (e) information regarding the Company's employees and consultants ("**Service Providers**"), lists of Service Provider names and other information, compensation, performance and skills; (f) valuable confidential business information of the Company that does not qualify as a trade secret; (g) any other non-public information which a competitor of the Company could use to the competitive disadvantage of the Company; and (h) any intellectual property transferred to the Company from its predecessors or their former affiliates. Notwithstanding the foregoing, it is understood that Proprietary Information excludes information that is generally known in the trade or industry through no breach of this Agreement or other wrongful act or omission by me.

**1.3 Nondisclosure.** At all times during my employment and at all times thereafter, I will hold in strictest confidence and will not disclose, use, lecture upon or publish any of the Company's Proprietary Information, except as such disclosure, use or publication may be required in connection with my work for the Company, or unless the President of the Company expressly authorizes such in writing. I will obtain the Company's written approval before publishing or submitting for publication any material (written, verbal, or otherwise) that relates to my work at the Company and incorporates any Proprietary Information or otherwise includes any Proprietary information. I hereby assign to the Company any rights I may have or acquire in such Proprietary Information and recognize that all Proprietary Information shall be the sole property of the Company and its assigns. I will take all reasonable precautions to prevent the inadvertent or accidental disclosure of the Company's Proprietary Information. I understand and agree that the covenants, restrictions and prohibitions against disclosure of Proprietary Information are in addition to, and not in lieu of, any rights or remedies which the Company may have available pursuant to the laws of any jurisdiction or at common law to prevent disclosure of trade secrets or proprietary information, and the enforcement by the Company of its rights and remedies pursuant to this Agreement shall not be construed as a waiver of any other rights or available remedies which it may possess in law or equity absent this Agreement.

**1.4 Third Party Information.** I understand, in addition, that the Company has received in confidence and in the future will receive in confidence from third parties, including (without limitation), affiliates, alliance members, developers and partners of the Company or its predecessors, confidential and/or proprietary information and data, and trade secrets belonging to such third parties ("**Third Party Information**"). During my employment and thereafter, I will hold

Third Party Information in the strictest confidence and will not use it, nor will I disclose it to anyone (other than Company personnel who need to know such information in connection with their work for the Company), except in connection with my work for the Company, or unless expressly authorized in writing by the President of the Company.

**1.5 No Improper Use of Information of Prior Employers and Others.** During my employment by the Company I will not improperly use or disclose any confidential or proprietary information or trade secrets, if any, of any former employer or any other person or entity to whom I have an obligation of confidentiality, and I will not bring onto the premises of the Company any unpublished documents or any property belonging to any former employer or any other person or entity to whom I have an obligation of confidentiality unless consented to in writing by that former employer, person or entity. Notwithstanding the foregoing, it is understood that, at all such times, I am free to use information that is generally known in the trade or industry through no wrongful act or omission by me of my obligation of confidentiality to any former employer or other person or entity.

**1.6 The Defend Trade Secrets Act of 2016.** The Defend Trade Secrets Act of 2016 (the "Act") provides that: (1) An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that: (A) is made – (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. The Act further provides that: an individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual: (A) files any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order.

**2. Duty of Loyalty & Best Efforts During Employment.** I agree that during the period of my employment by the Company I will not, without the Company's express written consent, engage in any employment or business activity that (i) is competitive in any way with the business, or planned business, of the Company or (ii) would conflict with, or otherwise interfere with my ability to satisfactorily perform the duties and responsibilities of, my employment by the Company. I also agree to use my best efforts and full time business time in advancing the interests of the Company during my employment.

**3. No Solicitation of Employees, Service Providers, or Customers and No Competition Agreement.** I agree that during the period of my employment with the Company, and for the period of one (1) year after the date my employment with the Company ends for any reason, I will not, as an officer, director, employee, consultant, owner, partner of another person or entity, or in any other capacity, either directly or through others:

**3.1** solicit, induce, encourage, or participate, directly or indirectly, in soliciting, inducing, or encouraging any employee or Service Provider to terminate or reduce his or her relationship with the Company.

**3.2** solicit, divert or appropriate or attempt to solicit, divert or appropriate, by use of Proprietary Information or otherwise, any Customer of the Company with whom I had contact and/or about which I had Proprietary Information during my employment with the Company, for the purpose of selling or providing to that Customer any services or products competitive with those available from the Company.

**3.3** directly or indirectly, become employed by or provide services to (as an employee, consultant

or otherwise), or acquire or maintain any ownership interest in, any business where such business is competitive in any way with any business lines in which I worked for the Company during the last twelve months of my employment; provided, however, that this restriction contained in Section 3.3 shall only apply to the larger of the geographic area that I supported or provided services to on behalf of the Company during the last twelve months of my employment or within 100 miles of any specific location at which I worked or for which I had any responsibility during the last twelve months of my employment with the Company.

**3.4** directly or indirectly, become employed by or provide services to (as an employee, consultant or otherwise), or acquire or maintain any ownership interest in, any business, regardless of geographic location, where (1) such business is competitive in any way with any business lines in which I worked for the Company during the last twelve months of my employment and (2) because of the nature of such business and my new role, my knowledge of and/or exposure to the Company's Proprietary Information could be used, intentionally, inadvertently, or inevitably, to the disadvantage of the Company.

**3.5** Notwithstanding the foregoing, to the extent I provide services to the Company as an employee based in California, then the post-termination restrictions of Sections 3.2, 3.3, and 3.4 will not apply and will not be enforced by the Company with respect to post-termination conduct that occurs while I am a resident of California, or to conduct that occurs when I am employed in California.

## 4. Reasonableness of Restrictions.

**4.1** I agree that I have read this entire Agreement and understand it. I agree that this Agreement does not prevent me from earning a living or pursuing my career. I agree that the restrictions contained in this Agreement are reasonable, proper, and necessitated by the Company's legitimate business interests. I represent and agree that I am entering into this Agreement freely and with knowledge of its contents with the intent to be bound by the Agreement and the restrictions contained herein.

**4.2** In the event that, any one or more of the restrictions or obligations of Sections 1, 2, 3, and/or 5 of this Agreement shall for any reason be held to be unenforceable for any reason including, but not limited to, being excessively broad as to duration, scope, activity or subject, it shall be construed or modified by limiting and reducing it, so as to provide the Company with the maximum protection of its business interests and yet be enforceable under the applicable law as it shall then appear.

## 5. Legal and Equitable Remedies.

**5.1** I agree that it may be impossible to assess the damages caused by my violation of this Agreement or any of its terms. I agree that any threatened or actual violation of this Agreement or any of its terms will constitute immediate and irreparable injury to the Company and the Company shall have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that the Company may have for a breach or threatened breach of this Agreement.

**5.2** I agree that if the Company is successful in whole or in part in any legal or equitable action against me under this Agreement, the Company shall be entitled to payment of all costs, including reasonable attorney's fees, from me.

**5.3** In the event that the Company enforces this Agreement through a court order, I agree that the restrictions of Section 3 shall remain in effect for a period specified in the order enforcing this

Agreement, and I understand and agree that such period may extend the date specified in Section 3 in order to remedy any period of my violation of Section 3.

**6. Notification Of New Employer.** In the event that I leave the employ of the Company, I hereby consent to the notification of my new employer of my rights and obligations under this Agreement.

**7. General Provisions.**

**7.1 Governing Law.** To the maximum extent permitted by law, this Agreement will be governed by and construed according to the laws of the State of Delaware.

**7.2 Severability.** In case any one or more of the provisions, subsections, or sentences contained in this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect the other provisions of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

**7.3 Successors and Assigns.** This Agreement is for the benefit of the Company, its successors, assigns, parent corporations, subsidiaries, affiliates, and purchasers, and will be binding upon my heirs, executors, administrators and other legal representatives, and as such may be assigned by the Company at any time without my consent to its successors, assigns, parent corporations, subsidiaries, affiliates, and purchasers.

**7.4 Survival.** The provisions of this Agreement shall survive the termination of my employment, regardless of the reason, and the assignment of this Agreement by the Company to any successor in interest or other assignee.

**7.5 Employment At-Will.** I agree and understand that nothing in this Agreement shall change my at-will employment status or confer any right with respect to continuation of employment by the Company, nor shall it interfere in any way with my right or the Company's right to terminate my employment at any time, with or without cause.

**7.6 Waiver.** No waiver by the Company of any breach of this Agreement shall be a waiver of any preceding or succeeding breach. No waiver by the Company of any right under this Agreement shall be construed as a waiver of any other right. The Company shall not be required to give notice to enforce strict adherence to all terms of this Agreement.

**7.7 Advice of Counsel. I ACKNOWLEDGE THAT, IN EXECUTING THIS AGREEMENT, I HAVE HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL. THIS AGREEMENT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF.**

**7.8 Certification of Compliance.** I agree that upon termination of my employment with the Company, for any reason, I will provide the Company with information regarding any new employment, consulting arrangement, agreement to provide services to a business, or business ownership arrangement I am entering into, including the identity of any new employer, consulting client or other client for whom I will provide services, or business I will own, the nature and general operations of any such employer, client, or business, and the specific services I will be providing for any such employer, client, or business, such that the Company has sufficient information to determine whether I am in compliance with this Agreement. I also agree to certify, at the Company's request that I am and will remain in compliance with this Agreement after my termination of employment.

**7.9 Entire Agreement.** This Agreement is the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior discussions between us. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing and signed by the parties. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

**7.10 Effective Date.** This Agreement shall be effective as of the date noted below.

**I have read my offer letter and agreement carefully and understand its terms.**
**By signing, I accept and agree to the terms and conditions of my offer letter and agreement.**

Electronically Signed By:



Signed on 06/14/2021

# Exhibit 6

7/28/2021

  728478:1808837224)

**PRE-ADVERSE ACTION NOTICE**

Dear 

The purpose of this letter is to advise you that Aramark or one of its affiliates or subsidiaries, has obtained the enclosed consumer report from the following consumer reporting agency:

Reasons for Potential Disqualification

**DOJ Sex Offender Search -** ▮▮▮▮▮▮▮▮▮▮
**County Court Search -** ▮▮▮▮▮▮▮▮▮, **MI-GENESEE**

Sterling Infosystems, Inc. dba Sterling Talent Solutions
Dispute Resolution Department
4511 Rockside Road #400,
Independence, OH 44131
Phone: 888.889.5248
Email: dispute.resolution@sterlingts.com

Because we may use this report to make an adverse employment decision, we are required by law to provide a copy of the report to you along with a summary of your rights under the Fair Credit Reporting Act. We are also providing you with a copy of Section 1786.22 of the California Civil Code, which provides information regarding the California Investigative Consumer Reporting Agencies Act, or Article 23-A of the New York Correction Law, to the extent applicable.

If you are disputing the drug screening results and/or are electing to pay for a drug reconfirmation test at your expense, or if you believe that you were not correctly identified in this report or that the information provided in the report is otherwise not accurate, please contact Sterling Infosystems, Inc. dba Sterling Talent Solutions within six (6) business days of the date on this letter.

Even if all of the information provided in this report is accurate, Aramark welcomes any additional information related to the report that you would like us to consider, including information regarding your rehabilitation and good conduct in the time since the criminal conviction(s) listed on the report or any other information related to the report that you would like us to consider before we make a final employment decision. Please contact **Aramark Adjudication Team at (844) 441-6947** within six (6)

business days of the date on this this letter. If we do not hear from you within six (6) business days, we will assume the information is correct as reported and we may make a final employment decision based upon information contained in the enclosed consumer report.

Aramark, not the consumer reporting agency, will make the relevant employment decision. Accordingly, the consumer reporting agency that provided the enclosed report will be unable to explain any adverse decision that we may make based in whole or in part on the report. Please read the enclosed summary of your rights for important additional information.

Sincerely,
Aramark Adjudication Team

Enclosure

Exhibit 7

**STATE OF MICHIGAN**

## IN THE CIRCUIT COURT FOR THE COUNTY OF GENESEE

█████████████,
                 Plaintiff,                          CASE No.**08-282195-DM**

v.                                                   Judge F. KAY BEHM

█████████████,
                 Defendant.

A TRUE COPY
Michael J. Carr, Clerk

<table>
<tr><td>

**JAMES H. STEPHENSON, II  (P-48101)**
Attorney for Plaintiff
5409 Gateway Centre Drive, Ste C
Flint, Michigan  48507
Telephone:  810.732.6300
Fax:          810.244.6928
</td><td>

**SHELDON SIEGEL (P-20436)**
Attorney for Defendant
653 S. Saginaw St. Ste 316
Flint, MI 48502
Telephone:  810.238.1599
Fax:          810.238.1998
</td></tr>
</table>

JAMES H. STEPHENSON, II, Attorney and Counselor
5409 Gateway Centre Drive, Suite C, Flint, Michigan 48507   Telephone: 810.732.6300   Fax: 810.244.6928

## <u>CONSENT JUDGMENT OF DIVORCE</u>

At a session of the Court, held in the
city of Flint, county of Genesee, state of Michigan
on the _____ day of _____, 2009

**PRESENT**:  The Honorable F. Kay Behm, Family Court Judge

     This cause coming on to be heard upon the pleadings, and proofs having been taken in open Court, from which it satisfactorily appears that the Plaintiff is entitled to a Judgment of Divorce for the reason that there has been a breakdown of the marriage relationship to the extent that the objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved, and James H. Stephenson, II having appeared as attorney for Plaintiff and Sheldon Siegel having appeared as attorney for Defendant, and the Court being fully advised in the premises;

**IT IS HEREBY ORDERED AND ADJUDGED:**

1.    This Court, by virtue of the authority therein vested and pursuant to the statute in such case made and provided, doth ORDER that the marriage between Plaintiff ███████ ██████, and Defendant, ████████████████, be and the same is hereby dissolved and a divorce from the bonds of matrimony is ordered.

Page 1 of  7

# Exhibit 8



STATE OF MICHIGAN
### DEPARTMENT OF CORRECTIONS
LANSING

Gretchen Whitmer
GOVERNOR

HEIDI E. WASHINGTON
DIRECTOR

DATE:     06/02/2020

TO:     Mr. ███████
DOB: ████████
Michigan Department of Corrections, #220805

RE:     **VERIFICATION OF INCARCERATION:**

Per your request you were incarcerated with the Michigan Department of Corrections for the charge(s)
listed below and was terminated on 02/27/1999.

|    | Term    | Charge                                              | Sentence Date | Termination Date |
|----|---------|-----------------------------------------------------|---------------|------------------|
| 02 | 6y – 15y | Criminal Sexual Conduct, 2nd Deg (Multiple Variables | 12/11/1991    | 02/27/1999       |
| 01 | 3y – 5y  | Criminal Sexual Conduct, 2nd Deg (Multiple Variables | 11/27/1991    | 03/05/1996       |

Attached is the Offender Movement report which shows the offenders confinement dates along with the
date he discharged from the Department.

If you have any questions or require further information you can contact this office at (517) 335-1845.

Sincerely,

MDOC, Central Office Records

# ichigan Department of Corrections

## Offender Movement Report

**MDOC Nbr.:** 220805

**Offender Name:** ████████████

**Report Date:** 06/02/2020

**From:** 12/3/1991

**To:** 2/27/1999

| Date | Movement Reason | From | To |
|------|-----------------|------|-----|
| 02/27/1999 | Discharged from Parole | Genesee/Flint/Parole/REP | Outside MDOC Jurisdiction |
| 03/27/1997 | First Parole | THUMB CORRECTIONAL FACILITY | Genesee/Flint/Parole/REP |
| 07/22/1992 | Transfer In ... Institutional or Caseload | EARNEST C. BROOKS CORRECTION, | THUMB CORRECTIONAL FACILITY |
| 07/22/1992 | Transferred Out ... Institutional or Caseload | EARNEST C. BROOKS CORRECTION, | THUMB CORRECTIONAL FACILITY |
| 12/27/1991 | Transfer In ... Institutional or Caseload | CHARLES EGELER RECEPTION AND | EARNEST C. BROOKS CORRECTION, |
| 12/27/1991 | Transferred Out ... Institutional or Caseload | CHARLES EGELER RECEPTION AND | EARNEST C. BROOKS CORRECTION, |
| 12/13/1991 | Returned from Court | Iosco County Sheriff's Department | CHARLES EGELER RECEPTION AND |
| 12/11/1991 | Released to Court on Writ | CHARLES EGELER RECEPTION AND | Genesee County Sheriff's Department |
| 12/03/1991 | New Commitment (Reception Center Only) | Outside MDOC Jurisdiction | CHARLES EGELER RECEPTION AND |